```
     C3ckkadc                    CONFERENCE

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    ADINA KADDEN,

4                    Plaintiff,

5              v.                         11 CV 4892 (SAS)

6    VISUALEX LLC,

7                    Defendant.

8    ------------------------------x
                                         New York, N.Y.
9                                        March 12, 2012
                                         3:17 p.m.
10
     Before:
11
                      HON. SHIRA A. SCHEINDLIN,
12
                                         District Judge
13
                           APPEARANCES
14
     MARK RISK PC
15       Attorney for Plaintiff
     MARK RISK
16
     EPSTEIN BECKER & GREEN PC
17       Attorneys for Defendant
     TRAYCEE ELLEN KLEIN
18

19

20

21

22

23

24

25
```

C3ckkadc                          CONFERENCE

1           (In open court)

2           THE COURT:  Mr. Risk, is that you?  And Ms. Klein?

3           MS. KLEIN:  Yes.

4           THE COURT:  Is it Klein, K-L-E-I-N?

5           MS. KLEIN:  Yes.

6           THE COURT:  OK.

7           I wasn't even sure you still needed to see me because

8    I had two letters on this case, one dated February 16th and one

9    dated February 22nd.  Unfortunately, I read them then, which

10   means I can't remember a word now.  But I did make a note.

11   Here's the note I made to myself:  "The plaintiff's 2/16 letter

12   complains of three things.  The defendant's 2/23 letter

13   resolves two of the three.  Call the plaintiffs lawyer.  Does

14   he still seek court intervention?"  Two of the problems seem to

15   be resolved in the letters.

16          MR. RISK:  Yes --

17          THE COURT:  Good.

18          MR. RISK:  -- and we subsequently scheduled this

19   conference.

20          Should I remind your Honor of the third thing?

21          THE COURT:  Yes, I have one thing to decide, right?

22          MR. RISK:  Yes.

23          THE COURT:  All right, so I'll look it up in the first

24   letter, the moving letter.  Which are the numbers 1, 2, 3 or 4?

25   1, 2 or 3?

C3ckkadc                    CONFERENCE

1          MR. RISK:  It's the issue about the

2   attorney-client/work product privilege.

3          MS. KLEIN:  It's number 2.

4          THE COURT:  Number 2?  So he wrote -- I'm just going

5   to read it aloud for the record, thereby reminding myself --

6   "VisuaLex has pleaded as an affirmative defense that it

7   exercised good faith in determining in March 2009 that Kadden

8   was not entitled to overtime compensation (at which time it

9   stopped paying it).  Such a defense, if proven by VisuaLex,

10  limits Kadden's liquidated damages remedies.  VisuaLex has

11  identified its privileges as a series of emails exchanged with

12  outside counsel in March of 2009.  VisuaLex appears to be

13  relying on the communications as the basis for its good-faith

14  claim while declining to produce them.  We argue that VisuaLex

15  should either produce the document or draft advice of counsel

16  as basis for its good-faith defense.  The emails might reveal

17  that counsel advised VisuaLex that Kadden was nonexempt."

18          And in the response --

19          MS. KLEIN:  Right.

20          THE COURT:  Oh, that's long, so I'll have to summarize

21  it.

22          You say there are two reasons they're not entitled to

23  these privileged documents:  First, it's too early at this

24  moment.  If the Court finds that plaintiff was exempt, then the

25  issue of good faith never becomes an issue.

C3ckkadc                         CONFERENCE

        So the defendant thinks this should be postponed until

after summary judgment on the issue of exempt or nonexempt.

        But secondly, counsel, plaintiff's counsel, has

supposedly given a lot of leeway when deposing a president and

one of the owners of VisuaLex.  Plaintiff's counsel questioned

this lady about what the reasons were for the change of

compensation for Ms. Kadden and what steps VisuaLex took to

determine if the position of litigation practice consultants

was exempt or nonexempt.  Ms. Romano testified that she went

online she read information, and she consulted with the

Department of Labor website and she consulted counsel.

        When asked about her interaction with counsel, the

parties agreed that she could answer whether she followed the

advice of counsel yes or no.

        Did she answer yes or no to that?  What did she say?

        MS. KLEIN:  She said yes.

        THE COURT:  Yes, she followed the advice of counsel?

OK.

        Then defense counsel takes the position that if I

think that this should be decided at this stage of the

litigation, the documents should be submitted for in camera

review to determine whether there's any bad faith there.  And

that would strike the balance.

        So that's the remaining issue?  That's it?

        MR. RISK:  Yes, your Honor.

1           THE COURT:  That's all you're doing here today?

2           MR. RISK:  Well, I may raise some other matters with

3      the Court but that's principally why we're here today.

4           THE COURT:  Well, as far as that matter goes, why

5      isn't your adversary right about first we figure out if she's

6      exempt because we don't ever reach good faith if she's exempt?

7           MR. RISK:  Well, up until this moment there's been no

8      bifurcation of discovery.  I have a discovery cutoff, and I had

9      to either do it or raise it with your Honor.  I might also add

10     that it's possible in summary judgment practice I would move

11     for summary judgment with respect to the third affirmative

12     defense, which is the good-faith defense.

13          THE COURT:  Well, I understand your point.  It puts us

14     through two stages of motion practice.  If I find she's not

15     exempt, then I'd have to reach this good-faith issue and we'd

16     have to have discovery of privileged communication.

17          MR. RISK:  Yes, and depending upon -- there's a

18     privilege log produced with a list of emails back and forth --

19          THE COURT:  Sure.

20          MR. RISK:  -- in the two-week period prior to the

21     change in policy.

22          THE COURT:  Of course.  And she was asked if she

23     followed the advice of counsel.  She said yes.  So if I were to

24     review them in camera, it's likely they won't show bad faith,

25     it's likely that -- that's my guess.

1           MR. RISK:  They'll say what they say.

2           THE COURT:  True, but counsel represented her, she's

3     seen them, that Romano followed the advice of counsel.

4           MR. RISK:  Well, Romano said she followed it.  That's

5     the basis of the defense from which they're going to seek to

6     pay no liquidated damages.  I need to see them and possibly

7     take a brief deposition of Ms. Romano about them.  Your Honor

8     certainly may order that.

9           THE COURT:  Well, if I looked at them in camera and

10    the advice says she's exempt, you don't have to pay, there's

11    nothing much more to do.

12          MR. RISK:  If they say that unambiguously, I suppose

13    that's right.

14          THE COURT:  Yes.  How many documents would I have to

15    look at to determine?

16          MS. KLEIN:  Not very many, and I actually brought them

17    in case your Honor wanted to get to that point.

18          THE COURT:  That may be the fastest way, look at them.

19          MS. KLEIN:  I can assure you, as a member of the bar

20    and having signed this document, that there is nothing

21    contrary.  Would you like me to approach with them, your Honor?

22          THE COURT:  Yes.  But I think your adversary should

23    accept your representation.  If you read them all, it seems

24    silly for me to do it too.

25          MR. RISK:  Well, your Honor, I'm a lawyer taking

C3ckkadc                    CONFERENCE

 1  discovery; I feel I need to see them.

 2          THE COURT:  I know, but we're not going to give them

 3  to you.  If they say what your adversary says they say, you

 4  really are questioning her.

 5          MR. RISK:  If they unambiguously say we believe

 6  Ms. Klein is exempt and your Honor presents that --

 7          THE COURT:  I know, but your adversary represented

 8  that.  I don't know why I have to do --

 9          MR. RISK:  Well, respectfully, I'd like your Honor to

10  review them.

11          MS. KLEIN:  Your Honor, can I add one thing:  Of

12  course I'll give them to the Court, but the bigger issue, which

13  goes to the liquated damages, is whether or not there is

14  anything in here that would show that they disregarded --

15          THE COURT:  Right, of course.

16          MS. KLEIN:  -- my advice.

17          THE COURT:  It's you?

18          MS. KLEIN:  Yes, it's me.

19          THE COURT:  Oh, you're the counsel that gave the

20  advice?

21          MS. KLEIN:  Yes.

22          May I approach?

23          THE COURT:  Then I guess you agree with them.

24          MS. KLEIN:  I have to.

25          THE COURT:  You really know what they say.

C3ckkadc                    CONFERENCE

1              MS. KLEIN:  I do, I do.

2              Because they were emails to and from me, I apologize

3    how they printed out but that's just how it worked.

4              THE COURT:  Right.

5              (Pause)

6              THE COURT:  OK, it's just as your adversary

7    represented.

8              MS. KLEIN:  May I approach, your Honor?

9              THE COURT:  Yes.  The advice is essentially they're

10   exempt.

11             MR. RISK:  Well, your Honor --

12             THE COURT:  There's nothing for you to see.

13             MR. RISK:  That's true if VisuaLex accurately

14   described --

15             THE COURT:  No, I read it.

16             MR. RISK:  Well, if the company accurately described

17   the plaintiff's duties to Ms. Klein.  She can only --

18             THE COURT:  They used the offer letters.

19             MR. RISK:  Well, candidly, your Honor, the case for

20   liability --

21             THE COURT:  Have you seen the offer letters?

22             MR. RISK:  Yes.

23             THE COURT:  OK, so it's based on the offer letters.

24             MR. RISK:  Well, candidly, your Honor, the case for

25   nonexemption is so solid here, it's hard to imagine that such a

C3ckkadc                    CONFERENCE

1    counsel opinion, but your Honor's read them and I think you've

2    ruled.

3             THE COURT:  Yes.

4             MR. RISK:  While we are here -- we're up to the

5    discovery cutoff and we're due here next week I guess for a --

6             THE COURT:  Premotion conference?

7             MR. RISK:  -- premotion conference.  And we can return

8    for that.  I have outstanding a short list of document requests

9    to the defendant from February 23rd.  I'd like your Honor to

10   direct that we resolve them by next week.  Defendant's stated

11   position is it won't discuss them with me because I sent them

12   by letter rather than by an additional Rule 34 demand.

13            THE COURT:  I don't stand by formalities very much.

14   So I'm not worried about it not having the words "Rule 34" in

15   the upper right-hand corner.  Are you prepared to give the

16   documents or no, substantively?

17            MS. KLEIN:  Your Honor, my response to Mr. Risk was

18   more than that, that it was just not in the form of a Rule 34;

19   it was also premature in that we didn't have the amount of time

20   we were entitled to, either formal or informal, under Rule 34

21   to respond.  I don't I believe some of the documents will be

22   produced, but, again, I'm still evaluating that within the time

23   frame we're allowed.

24            THE COURT:  You mean under the rules?

25            MS. KLEIN:  Yes.

C3ckkadc                    CONFERENCE

1          THE COURT:  But the rules say -- nobody wants to read

2     that phrase, whether it can shortened or lengthened by the

3     Court.  It's not 30 days -- that's sort of presumptive.  But if

4     he says I need it by the discovery cutoff so I can get it by

5     the premotion conference, it's not that hard to look through

6     and see whether you object or plan to produce them.

7          MS. KLEIN:  Your Honor, I can have them to him before

8     next week's conference.

9          THE COURT:  All right.  So apparently --

10         MR. RISK:  If there's something we can't resolve,

11    we'll raise it with you next week if that's OK.

12         THE COURT:  That's slow.  I'd like to get it done.

13    Why don't you raise it tomorrow by phone so we're ready for

14    next week's conference, take a look at it.

15         MS. KLEIN:  I can have a response by the close of

16    business tomorrow, to Mr. Risk.

17         THE COURT:  That won't do me any good because I'm

18    leaving at the close of business tomorrow for a big three-day

19    holiday.

20         MS. KLEIN:  I will try to get it to him well before

21    that.

22         THE COURT:  I mean that's it for a year, so that's

23    kind of pathetic.  So I'd like my three days without worrying

24    about this case.

25         MS. KLEIN:  Your Honor -- Mr. Risk, are you done with

C3ckkadc                          CONFERENCE

1    your discovery issues?

2            THE COURT:  Can't we just look at them now and see

3    whether any of them are objectionable?

4            MS. KLEIN:  Sure.

5            Number 1 of his request, I've provided that to him.

6            MR. RISK:  Well, that's not quite right.

7            MS. KLEIN:  OK, so why don't you address them.

8            MR. RISK:  If you'd like, your Honor, we've sought the

9    documents -- well, Ms. Kadden, VisuaLex is a small litigation

10   consulting firm with a small group of employees that renders

11   services for lawyers.  We were talking about the position of

12   litigation graphics consultant.  Ms. Kadden happens to have a

13   law degree although she's not a member of the bar.  Among the

14   many exemptions the defendant is claiming is the learned

15   professional exemption.  I think that discovery is showing that

16   the other people in her category were not lawyers and that the

17   specialized legal training was not required for the position.

18   There's about a half dozen other people over a short period;

19   I'm seeking their resumes, offer letters and job descriptions.

20           A moment ago I think the resumes were handed to me,

21   and I am waiting for the job descriptions and offer letters.

22           THE COURT:  Could you produce the offer letters and

23   job descriptions?

24           MS. KLEIN:  Your Honor, what I would represent is the

25   following:  The resumes have been given.  The offer letters are

C3ckkadc                        CONFERENCE

1   not going to add anything to that --

2          THE COURT:  But there's no reason they shouldn't be

3   produced.

4          MS. KLEIN:  No.

5          THE COURT:  All right.

6          MS. KLEIN:  I don't have a problem with the offer

7   letters.

8          THE COURT:  OK.

9          MR. RISK:  I think they will be probative of whether

10  Kadden's --

11         THE COURT:  I think she just said she has no problem,

12  so I wouldn't say anything else if I were you.

13         MR. RISK:  Sorry.

14         THE COURT:  Next?

15         MS. KLEIN:  Number 2, I can't give an answer to the

16  Court because I don't know whether or not such a thing exists;

17  I have to check with the client.

18         THE COURT:  That's number 2?

19         MS. KLEIN:  Number 2.

20         THE COURT:  What is number 2?

21         MR. RISK:  If I may, your Honor, it's a dropdown menu

22  from a software program.  I'm assuming that's not a hard item

23  for VisuaLex to produce.

24         THE COURT:  Is that what it is, Ms. Klein, a dropdown

25  menu?

1          MS. KLEIN:  He's describing it in his letter.  He's

2     asking for a copy of the list of, quote, service item options

3     from the dropdown menu in VisuaLex's QuickBooks software time

4     records program as it existed during Kadden's employment under

5     the column "Service Item" listing the categories of services,

6     i.e., consulting, project management, et cetera.

7          And what I'm represent is, I don't know if that exists

8     still.  I understand that's what counsel is describing it.  If

9     it does exist, I will be able to produce it.  I don't know

10    if --

11         THE COURT:  It should exist and it would describe what

12    the person actually did all day.  If you can get it, you have

13    to produce it.

14         OK, so she will produce that if she can locate it.

15    Next.

16         MS. KLEIN:  Your Honor, it's not if I can locate it;

17    it's whether or not they still use that software.

18         THE COURT:  It comes to the same thing.

19         MS. KLEIN:  If it exists.

20         THE COURT:  If it exists you're going to produce it.

21    That's the same as if you locate it.  If it doesn't exist, I

22    guess you won't located it.

23         Next.  What's next?

24         MR. RISK:  A corrected copy of one page from the

25    software program; something's cut off.

C3ckkadc                    CONFERENCE

1           MS. KLEIN:  Which you have been provided already?

2           THE COURT:  A corrected copy he has?

3           MR. RISK:  Well, it's still cut off.

4           MS. KLEIN:  It's the only one I have.

5           THE COURT:  Is that right?

6           MS. KLEIN:  It's exactly -- I sent him another one

7     last week.  It's exactly what I have.

8           THE COURT:  You can't produce it without it being cut

9     off when printed?

10          MR. RISK:  I think you have to go back to the

11    software.  If you can produce it, produce it; if not, you

12    can't.

13          THE COURT:  Sort of the like the other one, where

14    you're going to go back to the software, if you can produce it

15    in a better format, please do.

16          MS. KLEIN:  Sure.

17          THE COURT:  Next.

18          MR. RISK:  Number 4 is documents that indicate any

19    comp time given to Ms. Kadden per VisuaLex's testimony.

20          MS. KLEIN:  I think it's important for you to read the

21    next sentence for the Court.

22          MR. RISK:  I will.  I believe that Romano testified

23    she is not aware of the existence of any such document.

24          THE COURT:  OK, if there's no document showing comp

25    time, then you can't create what doesn't exist.  If there are

C3ckkadc                    CONFERENCE

1  any documents showing comp time, produce them.

2         MR. RISK:  Number 5 requires some explanation.  When

3  Ms. Klein took Ms. Kadden's deposition, there was some

4  testimony about several matters Kadden worked on that she had

5  larger responsibilities for, which VisuaLex is going to claim

6  is relevant to her exempt status.  We will claim that Kadden

7  had more responsibility when her boss, Ms. Romano, was out,

8  related to medical leave and illness of a parent, and that

9  those are not typical of her duties.  There was a short period.

10        So I've asked for, from the same time record program,

11 I've asked for the records indicating Ms. Romano's attendance

12 and activities during the period September through

13 December 2010 during which time Ms. Kadden was working on these

14 three cases.

15        THE COURT:  And your position, Ms. Klein?

16        MS. KLEIN:  Your Honor, I would object to this for

17 several reasons.  One, I don't believe that there is any

18 relevance to Ms. Romano's activities.  There is --

19        THE COURT:  Didn't he say Kadden filled in for her for

20 a period of time and performed her duties?

21        MR. RISK:  That's what we argue.

22        MS. KLEIN:  It sounds like that is what they're

23 arguing, but they hold the same position, the two women; they

24 are both litigation consultants for the company.

25        THE COURT:  But then we'd like to see what that other

C3ckkadc                    CONFERENCE

1   woman listed as her duties, her service item.

2          MR. RISK:  Where she was -- I think she was out a lot

3   during that quarter.

4          THE COURT:  Out --

5          MS. KLEIN:  If you're asking for records that show the

6   president and owner of the company is out on a sick day, I

7   don't believe it exists.

8          THE COURT:  I don't think that shows anything.

9   Anyway, it's what she fills in when she is there, what she

10  fills in on her time records.

11         MR. RISK:  But, your Honor, Ms. Klein, in her

12  deposition of Ms. Kadden, examined her extensively with respect

13  to her work on three cases.

14         THE COURT:  Right.

15         MR. RISK:  We're trying to say that in the scope of

16  Kadden's work at VisuaLex the three cases took place in a short

17  period when Ms. Romano was out.

18         THE COURT:  So you just want her to compile the number

19  of days --

20         MR. RISK:  I think it's in the software program.

21         THE COURT:  -- Ms. Romano was out during the

22  three-month period?

23         MR. RISK:  No, I think the software program will say

24  where and what she was doing.

25         THE COURT:  What does it matter if she was visiting a

C3ckkadc                         CONFERENCE

1   sick relative or in the hospital having elective surgery?

2            MS. KLEIN:  Which both happened.

3            THE COURT:  She was out; it doesn't matter.

4            MR. RISK:  Whatever the records say --

5            THE COURT:  No, that's an invasion of her privacy.  If

6   she was out, you might want to know that, was she out eight or

7   twenty days in the three-month period.  But where she was,

8   whether she was in the hospital having surgery, whether she was

9   visiting a sick mother, whether she was taking care of a sick

10  child is irrelevant to you; she was out.

11           MR. RISK:  That's right.

12           THE COURT:  So count up the number of days her records

13  show she was out during that period and simply write your

14  adversary a letter, saying I reviewed the time records and

15  Ms. Romano was out eight days or ten days or twenty-five days

16  during that quarter, whatever it is.

17           MS. KLEIN:  And during what quarter, Counsel, are you

18  asking for?

19           MR. RISK:  The fourth quarter of 2010.

20           THE COURT:  September to December.

21           MR. RISK:  September through December 2010.

22           MS. KLEIN:  OK, your Honor.

23           THE COURT:  You do it.  I trust you.  Say she was out

24  X number of days in that quarter, not at work.

25           MS. KLEIN:  Again, I know it's going to be very

1  similar to your answer before, but if it doesn't exist, it

2  doesn't exist.  But I will represent to the Court that as the

3  owner of the company I don't know her time records are kept

4  that way, but if it does, I will be able to provide you how

5  much time.

6          THE COURT:  How many days she was out?

7          MS. KLEIN:  Yes.

8          MR. RISK:  Your Honor, I think we know it exists

9  because it's a consulting firm that bills hours, it's on the

10  QuickBooks.  All I want is production of the QuickBooks.

11          THE COURT:  I'm not giving you that.

12          But you review it and tell him how many days she's out

13  in that quarter.  I suspect it is available -- I agree with

14  him -- for billing purposes.

15          MS. KLEIN:  There wouldn't be anything for billing if

16  she's not there billing.

17          THE COURT:  That would show.  So Monday through Friday

18  they're billing Monday through Thursday, no billing Friday, I

19  guess she's out.  Please do what I can.

20          MS. KLEIN:  Of course I will.

21          THE COURT:  Thank you.

22          What's next?  How many more of these do we have, 17?

23          MR. RISK:  One more, your Honor --

24          THE COURT:  Good.

25          MR. RISK:  -- but this is a letter I wrote two and a

C3ckkadc                          CONFERENCE

1    half weeks ago.

2              THE COURT:  One more is fine.  What is it?

3              MR. RISK:  Documents, if any, that describe the

4    payment of time and a half after 40 hours as, quote, an

5    incentive perk.  I don't think there are any but if there are,

6    I'd like to see them.

7              THE COURT:  I think I might have just read something

8    like that in the in camera stuff.

9              MS. KLEIN:  He has that letter, the finalized letter

10   that was delivered to employees.

11             THE COURT:  It sounded like incentive pay or

12   something.

13             MR. RISK:  It's our point, your Honor, that up until

14   March 31st of 2009 it was always called overtime.

15             THE COURT:  So are there any documents that describe

16   it as incentive pay?

17             MS. KLEIN:  No.  Ms. Romano testified that she didn't

18   believe that there are any other documents.

19             THE COURT:  And you have not seen any?

20             MS. KLEIN:  No.

21             THE COURT:  So she's not withholding anything; it

22   doesn't exist.

23             MR. RISK:  I'd like them to look so I can tell your

24   Honor in my papers there are none.

25             THE COURT:  Correct.  She says she has and there are

1   none.

2          MR. RISK:  That's all I have, your Honor.

3          THE COURT:  Now, you have a complaint?

4          MS. KLEIN:  Yes, it's a very -- I think the only two

5   outstanding things in regard to plaintiff's responses to

6   defendant's request essentially fall under two categories.  And

7   we have been going back and forth although plaintiff's counsel

8   has still not produced documents and we're at an impasse.

9          In particular, the requests dealt with -- the ones

10  that I would like to pursue with the Court -- documents from

11  plaintiff which concerned her interest in employment

12  opportunities, including but not limited to cover letters, job

13  inquiries, applications of employment that she submitted to

14  potential employers before coming to join VisuaLex.  The reason

15  I believe this is incredibly important is because it goes to

16  the heart of what the plaintiff was representing to

17  employers --

18         THE COURT:  I don't think so at all.  You can send out

19  a hundred letters, but it doesn't matter, it's the job you got.

20  What are your duties at the job, are you entitled, are you

21  exempt or nonexempt?  It doesn't matter what you wrote in a

22  hundred other letters because those are not jobs you got and it

23  just doesn't matter.

24         MS. KLEIN:  Your Honor, I would disagree slightly with

25  one thing because in regards to the professional exemption, it

C3ckkadc                       CONFERENCE

1   actually does matter.

2            THE COURT:  No, it doesn't.  Her duties here either

3   involved legal work or didn't involve legal work.  There's a

4   job category, job description.  There are other employees who

5   had it; they weren't lawyers.  I suspect this lawyer thing is a

6   red herring.  I'm not ordering her to do that.  You lose that

7   point.

8            Next.

9            MS. KLEIN:  I don't have to pursue the other one.  It

10  falls under the same vein, where I believe it's relevant but --

11           THE COURT:  I don't.

12           MS. KLEIN:  I hear you.

13           THE COURT:  Right, OK, thank you.

14           MS. KLEIN:  Your Honor, also just for the record,

15  since we have the record here, I just want to represent also,

16  the professional exemption, just for clarity -- and the regs

17  are very clear -- you could have five other professionals or

18  exempt people that are hired for the same position and they can

19  be nonexempt and the one person if they're hired because of a

20  particular --

21           THE COURT:  Because of?

22           MS. KLEIN:  Yes.

23           THE COURT:  Well, that's the key point.

24           MS. KLEIN:  That's exactly why this woman was --

25           THE COURT:  "Because of" is what she represented here,

C3ckkadc                              CONFERENCE

1    what she applied for here, what they interviewed her for here.

2    I don't care about the other letters in the job market.  You

3    send a hundred letters out.  Have you read the article about

4    the law graduate lawsuits that are going on?

5              MS. KLEIN:  Yes.

6              THE COURT:  Some of these people ended up in Starbucks

7    making coffee.  They're lawyers, so they wrote two different

8    kinds of resume all over the place.

9              MS. KLEIN:  Yes.

10             THE COURT:  All right.

11             MR. RISK:  Thank you, your Honor.  We'll see you next

12   week.

13             MS. KLEIN:  Thank you, your Honor.

14             THE COURT:  Don't forget to get the premotion

15   conference letters in the appropriate number of days in

16   advance.  So the way the rules say it, the moving letter six

17   days in advance, the response letter three days.

18             MR. RISK:  Thank you, your Honor.

19             MS. KLEIN:  Thank you, your Honor.

20                              * * *

21

22

23

24

25