UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADINA KADDEN,

                              Plaintiff,

               - against -                          11 CV 4892 (SAS)

VISUALEX, LLC,

                              Defendant.


**VISUALEX'S POST TRIAL BRIEF**


Traycee Ellen Klein
Margaret C. Thering
**EPSTEIN BECKER & GREEN, P.C.**
250 Park Avenue
New York, New York 10177-1211
Tel: 212.351.4500
tklein@ebglaw.com

Attorneys for Defendant
Visualex, LLC

# TABLE OF CONTENTS

Procedural Background...................................................................................................... 1

Preliminary Statement....................................................................................................... 1

I.   The Evidence Presented At Trial And Proposed
     Findings Of Facts......................................................................................................... 2

   A.   VisuaLex, Graphics Consultants, and the Role of Graphics Consultants Within
        VisuaLex ................................................................................................................. 2

   B.   VisuaLex Hires Plaintiff to Perform the Job of Graphics Consultant............................ 5

   C.   Plaintiff's Work as a Graphics Consultant.................................................................... 8

   D.   The Incentive Pay Stops............................................................................................. 14

   E.   The Termination of Plaintiff's Employment ................................................................. 15

II.  Plaintiff Was Properly Classified As Exempt
     Under The White Collar Exemptions ............................................................................ 16

   A.   Plaintiff's Salary Satisfied the Salary Basis Test ........................................................ 18

   B.   The Administrative Exemption – Analyzed Independently ............................................ 19

   C.   The Creative Professional Exemption - Analyzed Independently ................................. 25

   D.   The Learned Professional Exemption – Analyzed Independently ................................. 28

   E.   Plaintiff Is Exempt under the Combination Exemption ................................................. 31

Conclusion ........................................................................................................................ 37

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Altemus v. Federal Realty Investment Trust,*
  2012 WL 3090915 (4th Cir. July 31, 2012)...........................................................................36

*Austin v. CUNA Mut. Ins. Soc.,*
  240 FRD 420 (W.D. Wis. 2006)...................................................................................22, 25

*Cash v. Cycle Craft Co., Inc.,*
  508 F.3d 680 (1st Cir. 2007)........................................................................................17, 23

*Chambers v. Sodexo, Inc.,*
  No. 5:10-cv-77, 2012 WL 1098605 (S.D. Miss. Mar. 30, 2012)..............................................27

*Christopher, et al. v. SmithKline Beecham Corp.,*
  No. 11-204, 132 S. Ct. 2156 (U.S. June 18, 2012).....................................................17, 18, 36

*Fife v. Harmon,*
  171 F.3d 1173 (8th Cir. 1999) .........................................................................................31

*Freeman v. Ntl Broadcasting Co., Inc.,*
  80 F.3d 78 (2d Cir. 1996)...............................................................................................26

*Hines v. State Room, Inc.,*
  665 F.3d 235 (1st Cir. 2011)......................................................................................17, 22, 25

*IntraComm, Inc. v. Bajaj,*
  492 F. 3d 285 (4th Cir. 2007) ....................................................................................2, 16, 32

*Mota v. Imperial Parking Sys.,*
  No. 08 Civ. 9526, 2010 WL 3377497 (S.D.N.Y. Aug. 24, 2010) ...........................................32

*Pinillia v. Northwings Accessories Corp.,*
  No. 07-21564-CIV-HUCK/SIMONTON (S.D. Fl. Nov. 13, 2007) .........................................32

*Ramos v. Baldor Specialty Foods, Inc.,*
  687 F.3d 554 (2d Cir. 2012)............................................................................................17

*Schmidt v. Eagle Waste & Recycling, Inc.,*
  599 F.3d 626 (7th Cir. 2010) .....................................................................................25, 32

*Sherwood v. Washington Post,*
  871 F. Supp. 1471 (D.D.C. 1994) ...................................................................................26

*Solis v. Washington,*
      656 F.3d 1079 (9th Cir. 2011) ..................................................................................31

*Swartz v. Windstream Comm., Inc.,*
      No. 10-3313, 429 Fed.Appx. 102 (3d Cir. May 25, 2011) .....................................................22

## PROCEDURAL BACKGROUND

As the Court knows, a bench trial was held in connection with this matter on August 13, 14, and 15, 2012.  Prior to the bench trial, Defendant, VisuaLex, LLC ("VisuaLex") submitted its proposed findings of fact and conclusions of law, as well as a trial memorandum of law.  At the conclusion of the bench trial, pursuant to the request of Plaintiff, the Court granted permission for the parties to file post-trial submissions.  VisuaLex's post-trial submission, this brief, consists of statements of fact, supported by citations to the evidence adduced at trial, and conclusions of law based on the evidence.  This brief only deals with facts and law relevant to the issue of whether Plaintiff Adina Kadden is exempt from overtime under the applicable laws; it does not address damages.  Per the Court's direction and ruling, the parties will address damages, if necessary, after a determination of liability.  *See* Trial Transcript[1], at 111, 343.

## PRELIMINARY STATEMENT

The evidence at trial established that Plaintiff performed the duties and functions of an exempt employee.  Plaintiff received an annualized base salary of $75,000 a year while working at VisuaLex, and her salary was not subject to deductions.  Tr. 63, 239.  Plaintiff's annualized base salary was more than three times the amount of minimum pay required to meet the salary basis requirement under the wage and hour laws.  As the Court knows, the salary basis test requires an employee to receive at least $455 a week, which equates to $23,660 a year.  Plaintiff earned $1,442.30 a week.  In addition to satisfying the salary basis test, the undisputed evidence adduced at trial established that Plaintiff was exempt from overtime under the administrative exemption, the creative professional exemption, the learned professional exemption, and, most importantly, the combination exemption.  Under the combination exemption, even if this Court

---

[1] Hereinafter the term "Trial Transcript" is abbreviated as "Tr."

finds the evidence did not prove that Plaintiff fell 100% within the administrative exemption, the creative professional exemption, or the learned professional exemption, Plaintiff is still exempt from overtime based on the combination exemption.  As described by the Commissioner of the Department of Labor ("DOL"), the combination exemption addresses the situation that exists when an employee does not meet the primary duty requirement of any individual exemption. Specifically, the "combination exemption provides a mechanism for cobbling together different exempt duties for purposes of meeting the primary-duty test."  29 C.F.R. 541.708; *IntraComm, Inc. v. Bajaj*, 492 F. 3d 285, 294 (4th Cir. 2007).  The undisputed evidence establishes that when all of the primary duties performed by Plaintiff are considered in the aggregate, i.e. blending the administrative, creative and learned exempt duties performed by Plaintiff while she worked as a Graphics Consultant ("Graphics Consultant") at VisuaLex, she is not entitled to overtime based on the combination exemption.  According to the DOL, the combination exemption allows an employee to be exempt from overtime if she performs a myriad of exempt duties, none of which fit squarely under one exemption.  Specifically, the FLSA regulations allow an employee who performs a combination of exempt duties—but who does not satisfy the primary duty requirement under any of the stand-alone exemptions—to nonetheless qualify for exempt status. *Id.*

I.     **THE EVIDENCE PRESENTED AT TRIAL AND PROPOSED FINDINGS OF FACTS**

        A.     <u>VisuaLex, Graphics Consultants, and the Role of Graphics Consultants Within VisuaLex</u>

             1.     VisuaLex is a litigation support company that provides trial graphics.  Tr. 39-40.

2.      During the time that Plaintiff was employed, VisuaLex's workforce consisted of Consultants, Art Directors, Designers, a Production Coordinator, a Director of Motion Graphics, and a Bookkeeper. Tr. 40.

3.      VisuaLex considers the Graphics Consultants, Art Directors, and the Director of Motion Graphics to be exempt professional employees, and it considers the Designers, Production Coordinator, and Bookkeeper to be non-exempt non-professional staff employees. Tr. 96-98.

4.      The professional employees make the business decisions about what needs to be done and when it needs to be done, and the professional employees direct, supervise, and tell the non-professional staff what needs to be done. Tr. 267.

5.      Prior to working for VisuaLex, Ms. Romano, Plaintiff, and David Mykel all had experience working in the field of trial graphics. Tr. 38-39, 58-59, 190-192, 240, 348-350.

6.      In the experience of Ms. Romano, Plaintiff and Mr. Mykel, prior to joining VisuaLex, everyone who worked as a Graphics Consultant had an advanced degree and education well beyond high school and college. Tr. 38, 40-45, 314-315, 348, 351.

7.      As of 2008, Ms. Romano was not aware of any person working as a Graphics Consultant who did not have an advanced degree. Ms. Romano worked in the field of trial Graphics since 1990, and every Graphics Consultant she knew of held a Juris Doctorate degree or a post graduate degree in social sciences. Tr. 38, 40-45, 49, 185.

8.      As of the time that VisuaLex hired Plaintiff, every Graphics Consultant it had hired had an advanced degree.  Ms. Romano has a master's degree in applied research and evaluation.   Tr. 42, 145.  Theodore Gipstein had a J.D. degree. Tr. 45; Exh. AA.   Theodore

3

"Chip" Walker had a J.D. degree, and Marilyn Wesel had a J.D. degree.  Tr. 49-50, Exhs. Y and X.  Similarly, Kim Nawyn, and Nicole Matthiesen both had master's degrees.  Tr. 50; 52, Exhs W, Z.

9.      Trial graphics is a recognized professional field, and there is a professional association for Graphics Consultants.  Tr. 55, 350.  VisuaLex Graphics Consultants are recognized for their professional expertise and have been featured speakers for legal and social science organizations, such as the American Bar Association, Practicing Law Institute, and the American Society of Corporate Counsel and have been published in trade publications such as the National Law Journal.  Tr. 55-56.

10.      The primary job of the Graphics Consultant is to review and analyze case materials to conceptually create and develop the most effective visual strategy to help trial teams communicate their case to the trier of fact, for the obvious purpose of helping the clients get a win for their client.  Tr. 40, 43-45, 53.  The primary duty and responsibility of the people hired to work as Graphics Consultants at VisuaLex was, and is, to "review case materials and to come up with the most effective strategic presentation of key case facts and to buttress any case weaknesses to help our clients help their clients to win their case."  Tr. 53, 66.  In addition to conceiving and conceptualizing the visual strategy, it is the job of the Graphics Consultant to act as quality control before any demonstrative exhibit is sent to a client, always ensuring the demonstrative does what VisuaLex said it was going to do.  Tr. 68, 74, 116, 125, 268.

11.      The Graphics Consultants do not physically create the product, the demonstrative exhibits that are delivered to VisuaLex's clients.  Rather, the actual production of the demonstrative exhibit is done by the non-exempt Designers who work in the studio.  Tr. 10, 96, 128.

4

12.     Irrespective of whether a graphic put into the studio is an original or a revision to an existing demonstrative exhibit, the Graphics Consultant, when doing her job correctly, is always exercising independent discretion and judgment in critically analyzing, making decisions, and recommendations to VisuaLex's clients. Tr. 66, 68-70, 117-23, 268, 353. As a Graphics Consultant at VisuaLex, whether acting as "lead," "primary" or "third" consultant, the Graphics Consultant was always supposed to render his or her opinion to the other Graphics Consultants. Tr. 99- 100, 115-116, 242, 268, 329, 354.

13.     The Graphics Consultants at VisuaLex manage the studio staff, which includes the Designers and the Production Coordinator, and they are responsible for managing the expectations of VisuaLex's clients, and facilitating the process. Tr. 53, 95, 121-22, 183, 307, 321.

14.     When case work is slow, the Graphics Consultants do marketing for VisuaLex. Tr. 98.

15.     Cases at VisuaLex are always staffed with at least two, sometimes three, Graphics Consultants. Tr. 59, 352.

16.     It is undisputed in this case that the visual strategy developed and conceptually created by the Graphics Consultants is important and a matter of significance for both VisuaLex and its clients since the demonstrative exhibits can impact the outcome of the litigation. Tr. 77, 82, 251, 269, 311, 315-16, 318, 323, 331.

**B.      VisuaLex Hires Plaintiff to Perform the Job of Graphics Consultant**

17.     In 2008, VisuaLex was looking to hire a Graphics Consultant. Tr. 56.

18.     The Cowen Group, a headhunting company, forwarded a cover letter and resume of Plaintiff to VisuaLex for consideration for the Graphics Consultant position. Tr. 56-7, Exh. C.

5

19.     The documentation sent over from the Cowen Group indicated that Plaintiff had an advanced degree.  Specifically, it indicated that Plaintiff had gone to law school and had a Juris Doctorate degree. Tr. 57-8, Exh. C.

20.     The documentation presented to VisuaLex also indicated that Plaintiff's major as part of her undergraduate degree - a Bachelor of Science - was Liberal Arts with a concentration in Psychology. Tr. 56, Exh. C.

21.     The documentation submitted by the Cowen Group established that Plaintiff was fully familiar with the job of Graphics Consultant, as this is the same job that Plaintiff did at Doar Consulting, a competitor of VisuaLex.  Tr. 58.

22.     As a Graphics Consultant at Doar, Plaintiff represented that her duties and responsibilities, included: (1) "identification of strategic areas of concern in major litigation;" (2) "conduct[ing] extensive research to develop case theories;" (3) "develop[ing] and implement[ing] demonstrative graphics to aid in educating jurors in the subject matter;" (4) "manag[ing] [the] workflow of a team of consultants, trial support and Graphics Designers under tight time constraints;" and (5) "assist[ing] with new business procurement and client relationships." Tr. 56, Exh. C.

23.     Plaintiff also discussed her education, legal degree, and prior work experience as a Graphics Consultant during the interview process with VisuaLex.  Tr. 59, 189-90.

24.     When Plaintiff worked at Doar as a Graphics Consultant, she worked on a team. Tr. 59.

6

25.     When Plaintiff applied for the position of Graphics Consultant at VisuaLex, she understood that VisuaLex was looking to hire someone who would be responsible for coming up with demonstrative exhibits to present an idea or theory to the jury. Tr. 316.

26.     When Plaintiff worked at Doar, just like at VisuaLex, all of the other Graphics Consultants had an advanced degree. Tr. 314. Additionally, when Plaintiff worked at Doar as a Graphics Consultant, she was considered an exempt employee and as such did not receive overtime. Tr. 314.

27.     VisuaLex hired Plaintiff to do the same job that she was doing at Doar. Tr. 59-60.

28.     When Ms. Romano spoke to Plaintiff about the Graphics Consultant position that was available at VisuaLex, Ms. Romano told Plaintiff that VisuaLex was "really busy" and needed a Graphics Consultant "who could hit the ground running as soon as possible." Tr. 60.

29.     When Plaintiff accepted the job at VisuaLex, she understood the job was to review and understand complex information to figure out a visual strategy to present this information to help clients win cases. Tr. 240.

30.     Plaintiff did not have an employment contract and she was employed on an "at will" basis. Tr. 62.

31.     During Plaintiff's employment at VisuaLex she always received an annualized base salary of $75,000. Tr. 63, 239. Other than for health insurance deductions, Plaintiff's annualized base salary was never reduced or subject to deductions. Tr. 63, 239. Plaintiff's salary was never deducted if she came in late or left early. Tr. 239.

32.     VisuaLex paid a placement fee of $18,750 to the Cowen Group in connection with the placement of Plaintiff as a Graphics Consultant at VisuaLex. Tr. 63; Exh. E. VisuaLex has never paid such a placement fee (or a finder's fee) in connection with the hiring of non-professional staff. Tr. 63.

33.     As a professional employee at VisuaLex, Plaintiff received a "much higher" salary than the non-professional staff employees. Tr. 134. Plaintiff's salary was between $30,000 and $40,000 more than the salaries received by the non-professional employees of VisuaLex. Tr. 134.

34.     In addition to earning an annualized base salary, when Plaintiff first began working at VisuaLex, VisuaLex was paying its professional staff, including the Graphics Consultants, incentive compensation. Tr. 61-62. As such, Plaintiff received the incentive compensation, which was calculated based on time and a half payments for hours above 40 in a week, until April 2009, when VisuaLex could no longer afford to pay the incentive compensation to its professional staff. Tr. 61-62, 96, 142, 214, 321. Of course, the non-professional staff, the non-exempt employees, always received, and continue to receive, overtime pay based on the law. Tr. 96. Non-exempt overtime pay was not, and is not, considered by VisuaLex to be "incentive compensation."

C.     **Plaintiff's Work as a Graphics Consultant**

35.     Most of the work of the Graphics Consultants occurs at VisuaLex's office, and the primary beneficiaries of this work are VisuaLex's clients. Tr. 64.

36.     The Graphics Consultants at VisuaLex, including Plaintiff when she worked there, manage the studio staff, including telling the staff when they can and cannot take time off from work. Tr. 53-4, 95, 234.

8

37.     Throughout her employment at VisuaLex, Plaintiff always provided consulting services for clients, whether as a lead, primary, or back-up. Tr. 99. There were no restrictions on Plaintiff acting as a Graphics Consultant at VisuaLex. Tr. 136-137, 241-242.

38.     As a Graphics Consultant, Plaintiff had to conceive how an exhibit should look. When doing this, it is important that the graphics are conceptualized in such a way as to avoid cognitive dissonance among the jurors. Tr. 76, 77, 256, 316.

39.     During Plaintiff's employment, VisuaLex had a philosophy that Graphics Consultants were supposed to follow in order to separate themselves from their competitors. The philosophy was that Graphics Consultants are not "wrists" – that is, they do not blindly follow what their clients say. Tr. 66, 105, 163. Rather, they review case materials and recommend, based on their experience, the best way to present information to the trier of fact. Following this philosophy requires the Graphics Consultants to learn and understand complex case concepts so they can have intelligent conversations with their clients and experts. It also requires the Graphics Consultants review every graphic that is created to make sure it is, in their professional opinion, the most effective way to present the information. When the job is done correctly, if an attorney tells VisuaLex (either in writing or orally) what he or she "needs," the Graphics Consultant is supposed to ask the attorney what he or she wants the takeaway to be and then whether what the attorney wants will support the takeaway. Tr. 66-67, 105-106, 163. VisuaLex clients expect the Graphics Consultants to give their opinions on how to visually present difficult case concepts and explain the takeaway of the cases to the trier or fact. This is expected of all Graphics Consultants at VisuaLex. Tr. 65-67, 249, 317-319, 336-339.

40.     It is imperative that Graphics Consultants understand the cases so that they can make recommendations about how to visually present them. Tr. 71-72, 74- 75, 137, 196.

9

The Graphics Consultants have to use their creativity, imagination, knowledge, and discretion to sift through voluminous amounts of case information to pick out the concepts they think need to be supported visually. Tr. 186, 251. This requires the Graphics Consultants (including Plaintiff when she worked at VisuaLex) to read and understand background materials on their cases, including, expert reports, pleadings, depositions and medical records. Tr. 71-72, 196, 248-249, 251, 320-321.

41.     After reviewing the aforementioned materials, the Graphics Consultants come up with creative and strategic ways of depicting the case information in a visual format that will help the trial team advance its case in the most effective way possible. Tr. 186, 256-257, 260, 273-274.

42.     When the Graphics Consultants create the ideas for the demonstrative exhibits, those ideas come from their heads and imaginations. Tr. 267.

43.     After conceptualizing the graphics, Plaintiff testified that she would handwrite the instructions for the graphics on a sheet of paper so the art studio could bring life to her mental concept. She had to explain the visual strategy to the Designers and the Art Director. Tr. 53-34, 267, 316, 320.

44.     As a Graphics Consultant at VisuaLex, Plaintiff was not supposed to blindly follow a client's requested revision. She was responsible for making an independent assessment as to whether the requested revision was, in her experience and professional opinion, the right thing to do, when considering the overall strategic strategy and what the impact of the requested change was, if any, on the ultimate intended takeaway. At all times in the graphics creation process, the Graphics Consultants must analyze whether the graphics effectively communicate the intended takeaway. Tr. 68, 268, 319.

10

45.     Additionally, if a client gives the Graphics Consultant an idea for a graphic, it is the Graphics Consultant's job to tell the client whether she thought it was a good idea.  Plaintiff testified this was her job, and she did this.  The Graphics Consultants do this because how a graphic is layed out can matter for the purposes of jury persuasion.  Tr. 70, 302, 315-316, 318, 321.

46.     Graphics Consultants never use the same graphic twice since every case is different, and the recommended visual strategies and demonstrative exhibits must be specific to fit the unique fact pattern of the case.  Tr. 98, 273.

47.     In connection with doing her job as a Graphics Consultant at VisuaLex, Plaintiff reviewed highly complex legal documents, including medical records, pleadings, expert reports, and depositions, and Plaintiff did independent research.  Tr. 137, 247-49, 321.

48.     Another part of Plaintiff's job was managing the expectation of clients.  Tr. 136, 321, 331.

49.     Plaintiff also facilitated getting the graphics through the studio and engaged in proofing and revisions.  Tr. 308.

50.     Employees at VisuaLex keep track of the work they do in QuickBooks and use codes and descriptions to describe the work they do.  Tr. 126-127, 234-235.

51.     By use of different codes and descriptions, Plaintiff differentiated in QuickBooks between consulting work she did as a Graphics Consultant and between administrative work she did as a Graphics Consultant.  Tr. 128-129, 235, 237, 238, 245-247; Exh. U.

52.    Plaintiff testified that she would not have lied on her time sheets, and that if she recorded her time as consulting on a particular case, she was providing consulting services at that time. Tr. 252, 258, 259.

53.    Based on Exhibit U, Plaintiff's timesheets, Plaintiff identified by way of "Service Item" that 46% of her work was "Consulting".

54.    Examples of consulting work done by Plaintiff were demonstrated at trial and involved cases such as Wells Fargo, CSX, AlphaPharma, DeRea, CIEA, SCOR, and Sobieski. Tr. 65, 70-80, 85-93, 100-101, 242, 243, 248, 250-251, 302, 334-339; Exhs. G-1, U. The demonstrative exhibits shown by VisuaLex at trial were just a very small sample of the work she created while working as a Graphics Consultant at VisuaLex. Exh. U.

55.    Plaintiff testified, and Exhibit U demonstrates that, in addition to consulting, when Plaintiff worked at VisuaLex, she engaged in marketing, researched vendors, coordinated the search and selection for a new IT consultant, managed client expectations, and was responsible for facilitating the creation of the trial graphics and engaging in quality control to ensure documents sent to clients were accurate. Tr. 98, 136, 308, 321, 331; Exh. U. All of these tasks are consistent with the items described in Plaintiff's job description, introduced by Plaintiff as Exhibit 3, as well as Plaintiff's offer letter, Defendant's Exh. B.

56.    According to the job description and the offer letter, the Graphics Consultant job, required: reading case materials and working with attorneys to identify key case concepts; collaborating with VisuaLex's team of designers and animators to execute high quality, error-free graphics; proofreading the creative layouts with zero tolerance for errors; performing project management duties, such as providing the requisite leadership and accurate instructions to the art studio to ensure an efficient flow of work product so all deadlines were

met; communicating the urgency of deadlines to staff; proactively providing solutions to unexpected problems; and scheduling trial technicians and courtroom equipment. The Graphics Consultant also was required as part of their job to interact with clients, take direction from clients on revisions to existing graphics, as well as additional graphics that may be requested; communicate the revisions accurately to the art director; follow-up to ensure that client deadlines and requests were met; and manage client expectations. See Exhs B and 3.

57. Plaintiff admits that if she was doing administrative work relating to a case that was not consulting, she billed her time as project management. Tr. 259. For examples of Project Management entries see Exh. U, Bates Stamped pages VIS 00165, 00170, 00174, 00213, 00219-00221, 00228, 00237, 00263, 00266, 00300.

58. As can be seen by Plaintiff's time entries on Exhibit U, Plaintiff worked as a Graphics Consultant at VisuaLex on over 50 cases. Tr. 309; Exh. U.

59. The Graphics Consultants work on cases together, and the job of the Graphics Consultant does not change if one is or is not designated as the "lead" or "primary" consultant on a case. Tr. 67-68, 85-86, 99, 242.

60. While there is no different expectation of the work that is to be done by the lead or primary consultants, Plaintiff admits she was the primary contact on some cases including Sobieski, DeRea, and Mirror Worlds. Tr. 101, 242-243, 336-339.

61. Clients expect the same services from any of the VisuaLex consultants they are working with on a case. Tr. 339.

62. Plaintiff gave clients specific advice in connection with their cases. For example, in the Sobieski case, Plaintiff received an e-mail from the client asking her to make a circle in the graphics bigger. Tr. 105-106. If Plaintiff had been a "wrist," she would have

blindly made the circle bigger, but because she was a consultant, she told the client that the circle was small because the label on the product at issue in the case said "less than 1%" and that is what was being depicted in the graphic. The client followed her advice about keeping the circle small. Tr. 105-106; Exh I and J-1 excerpt.

63.    Another example of Plaintiff consulting is when Plaintiff received an e-mail from the client in the Sobieski matter, asking her to put a shipping container on a truck. Plaintiff advised the client that this was not the right thing to do because it would confuse the jurors. Tr. 125; Exh I & J-3 (excerpt 3).

64.    At all times during her employment at VisuaLex, Plaintiff was supposed to be performing the job of a Graphics Consultant, and is believed by VisuaLex to have been performing the job of a Graphics Consultant. Tr. 53, 59, 60, 65, 67, 69, 70, 71, 73-75, 78, 85, 86, 92, 93, 99, 100-103, 105, 106, 112, 113, 122, 124-126, 136-137, 186, 231, 241, 242-253, 255-258, 271-272.

D.    **The Incentive Pay Stops**

65.    As set forth in paragraph 34 above, in April 2009 VisuaLex stopped paying incentive compensation to its professional staff. VisuaLex could no longer afford to pay the incentive compensation to its professional staff because of the economic downturn. Tr. 129-132. Among other things, cases stopped coming in and some clients stopped paying bills. Tr. 130    To try to weather the storm, and before stopping the payment of the incentive compensation to the professional employees, the two employee-owners of VisuaLex stopped drawing salaries, one employee was laid off, VisuaLex put a hold on purchasing items needed for the business, and renegotiated leases. Tr. 129-133. Only after these measures were not successful, did VisuaLex halt the payment of the incentive compensation to the professional employees. Tr. 130 – 133, 142.

66.     VisuaLex explained to the professional staff, including Plaintiff, that it could no longer pay the incentive compensation. Tr. 142-144. It was explained to Plaintiff, and the other Graphics Consultants, that their annualized base salary, which for Plaintiff was $75,000 a year, was going to be their compensation going forward for all hours worked. Tr. 143-144. Plaintiff admitted at trial that she understood that from April 1, 2009 forward that the $75,000 annualized base salary was to compensate her for all hours worked. Tr. 321-322

67.     Before making the decision to stop paying incentive compensation, VisuaLex consulted with counsel. Tr. 138-142, 183-184 In addition to consulting with counsel, Ms. Romano independently conducted a thorough investigation in to the matter by reviewing relevant information at the Department of Labor website and completing the FLSA e-Law Advisor tests. Tr. 139, 140.

**E.     The Termination of Plaintiff's Employment**

68.     Plaintiff's employment at VisuaLex was terminated in March 2011. Tr. 188.

69.     Plaintiff does not dispute that she worked as a Consultant at VisuaLex. Tr. 322.   In resumes created by Plaintiff, subsequent to the termination of the incentive compensation, she has represented that she was a Consultant during her employment at VisuaLex and that her job at VisuaLex was "consulting to top-tier law firms to develop and implement demonstrative exhibits to aid and educate jurors in trial subject matter." Tr. 322-323.

70.     This is consistent and accurate as to what Plaintiff's job was during her employment at VisuaLex. Tr. 186. In the most simplistic words, Plaintiff's job was to use creativity, imagination, knowledge, and discretion to sift through the voluminous amounts of information that you are given in writing or verbally, and to pick out the things that she believed needed to be visually supported. Once Plaintiff identified issues that needed to be visually

supported, it was her job to come up with creative ways, strategic ways of not only how to depict the information in individual graphics, but also to make sure that the visual framework that was being created was going to assist the trial team in advancing its case in the most effective way possible, with the obvious goal of trying to help it win its case. Tr. 186.

## II. PLAINTIFF WAS PROPERLY CLASSIFIED AS EXEMPT UNDER THE WHITE COLLAR EXEMPTIONS

As previously set forth by VisuaLex, in its answer, pre-trial memorandum of law, and at the trial, the issue in this case is not limited to whether Plaintiff's work or advanced education fit her squarely into one exemption. The question is did Plaintiff's work and advanced education, individually or in the aggregate, demonstrate that she performed duties and responsibilities typically done by an exempt employee. As discussed at the trial, VisuaLex is entitled, as a matter of law, to classify Plaintiff as exempt if her hiring and job duties in the aggregate are more indicative of exempt work than non-exempt work. While it is true that the Fair Labor Standards Act ("FLSA") is to be narrowly construed, it is not to be construed so narrowly as to throw the proverbial baby out with the bath water. The Federal Regulations specifically authorize exemption from overtime based on a combination exemption. Thus, while it may be more common and more convenient to analyze specific exemptions individually and one by one against the evidence, it is not appropriate to deny exempt status without consideration of all of the duties performed by the employee. As set forth in the Federal Regulations, and as recently articulated by the Commissioner of the Department of Labor in an *amicus brief* submitted in connection with the case *IntraComm, Inc. v. Bajaj*, 492 F. 3d 285, 294 (4th Cir. 2007), an employee (such as Plaintiff) may be exempt based on a combination of functions, no one of which constitute the primary duty - or the employee's primary duty may involve two or three

categories of exemptions which are intermingled and difficult to segregate.[2]  If the employee's work as a whole indicates exempt status, the Court should conclude that Plaintiff is exempt.  As discussed at trial, the combination exemption specifically allows the cobbling together of different categories of exemptions and supports the proposition advanced by VisuaLex throughout this litigation that Plaintiff was properly classified as an exempt employee.

Sifting through the white collar exemptions and applying them is not always a clean and easy task.  In doing so, VisuaLex urges this Court to keep in mind the purpose of the FLSA.  The FLSA was not enacted to protect the nation's highly-paid and highly-educated workers.  Rather, it was enacted "to prevent wage exploitation of some of the most vulnerable workers in our society.  The purpose of such a standard was to raise up the bottom rung of wage earners, create more industrial harmony, and avoid labor disruptions and strikes."  Abrahams, Boyd, et al. *Employer's Guide to the Fair Labor Standards Act*, Thompson Publishing Group (2012) at *34. As has been reiterated time and time again in our Courts, and most recently by the Supreme Court of the United States in *Christopher, et al. v. SmithKline Beecham Corp.*, No. 11-204, 132 S. Ct. 2156, 2173 (U.S. June 18, 2012), the FLSA is not intended to protect employees that make the type of money that Plaintiff made at VisuaLex.  In *Christopher*, the Supreme Court opined "Petitioners – each of whom earned an average of more than $70,000 per year . . . are hardly the kind of employees that the FLSA was intended to protect."  *See also Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554 (2d Cir. 2012) (finding warehouse captains earning $700 per week to be exempt employees); *Hines*, 665 F.3d 235(finding wedding planners earning between $28,000

---

[2] The Court in *IntraComm* ultimately found the combination exemption did not apply in that case because the salary basis test had not been met.  There is no dispute, however, in this case that Kadden satisfied the salary basis test.  Moreover, other circuit courts have upheld the combination exemption in situations in which the salary basis test was met.  *See Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, (7th Cir. 2010).

per year and $77,000 exempt under the administrative exemption); *Cash*, 508 F.3d 680 (finding New Purchase/Customer Relations Manager at motorcycle store who earned $60,000 per year exempt under the administrative exemption.  The court noted in its analysis of whether the plaintiff was exempt: "in return for performing his duties, he earned a $60,000 salary, which was greater or equal to that of all the other managers, except for [one].").

In *Christopher*, the Supreme Court affirmed the old adage that "if it walks like a duck, quacks like a duck, and looks like a duck, then it must be a duck."  Analyzing the undisputed evidence presented at trial, one must conclude that the salary received by Plaintiff, and the duties she performed at VisuaLex, bear all indicia of an employee who was "employed in a bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1), thus exempting her from the overtime laws  *See* 29 U.S.C. § 201 *et seq.* (The minimum wage and maximum hour requirements of the [FLSA] do not apply to an employee who is "employed in a bona fide executive, administrative, or professional capacity.")  In *Christopher*, the Supreme Court took the opportunity to reiterate that in making determinations under the white collar exemptions, the language of the statute (when looking at the exemptions) emphasizes and favors a functional, rather than a formal, inquiry and that employee's responsibilities should be viewed in the context of the particular industry in which they work. 132 S. Ct. at 2170.

A.    **Plaintiff's Salary Satisfied the Salary Basis Test**

As the Court knows, to satisfy any of the exemptions, or a combination thereof, an employee must earn at least $455 a week on a salary basis under federal law (or $543.75 under NY law).  29 C.F.R. § 541.600(a); NY Comp. Codes R. & Regs. tit. 12, IIB, Part 142.  It is undisputed in this case that Plaintiff earned a weekly salary in excess of the amount required under both Federal and State law.  Plaintiff received an annualized base salary of $75,000 a year while working at VisuaLex, and her salary was not subject to deductions.  Tr. 63, 239.  Plaintiff's

18

annualized base salary was more than three times the amount of minimum pay required to meet the salary basis requirement under the wage and hour laws. Federal law requires an employee to make $455 a week, which equates to $23,660 a year. Plaintiff earned $1,442.30 a week, which annualizes to $75,000 a year. New York State law requires that to be exempt an employee must make more than $28,275 a year ($543.75 x 52). Again, it is undisputed that Plaintiff earned almost three times this amount of money.[3]

### B.   The Administrative Exemption – Analyzed Independently

Plaintiff's work at VisuaLex is exempt under the administrative category if the work she performed at VisuaLex required her to exercise discretion and independent judgment with respect to matters of significance on work that is directly related to the management or general business operations of VisuaLex or its customers. 29 C.F.R. § 541.201 - 202. According to the applicable regulation, work that "directly relates to the management or general business operations of the employer" is work that relates to the assisting of the running or servicing of the business, as opposed to working on a production line. Such work includes (but is not limited to) work in areas such as *quality control*, marketing, and advertising. 29 C.F.R. § 541.201 (a) - (b) *emphasis added*. The administrative work may include "[a]n employee who leads a team of other employees assigned to complete major projects for the employer . . . even if the employee does not have direct supervisory responsibility over the other employees on the team." 29 C.F.R. § 541.203(c). The undisputed evidence establishes that the work performed by Plaintiff while employed at VisuaLex fits squarely within the type of work contemplated by the Administrative Exemption.

---

[3] It is also undisputed that Plaintiff was paid incentive compensation from the time that she was hired until April 2009. Paying such additional compensation does not negate the applicability of any of the White Collar Exemptions. *See* 29 C.F.R. 541.604(a)("additional compensation based on hours worked for work beyond the normal workweek" may be paid without losing the exemption)

Plaintiff's own testimony and written time records describing her work establish that her job as a Graphics Consultant at VisuaLex consisted of the following: (1) conceptualizing trial graphics (but did not do the manual work of creating the graphics), Tr. 53-54, 136-137, 241, 262, 267, 316, 320; (2) facilitating the process of getting the graphics through the studio,[4] Tr. 254-255, 307-308; (3) overseeing the team of studio staff employees, including telling them what to do and when they could go home and when they had to come in, Tr. 53-54, 234, 260; (4) engaging in quality control, such as proofreading graphics, Tr. 203, 233, 308; Exh U; (5) managing client expectations and relationships, Tr. 321; (6) reviewing PowerPoint presentations for purposes of quality control to ensure that the clients were receiving the right items ("I would have the actual paper copy to see if this is the right version because there were so many versions of the graphics we wanted to make sure we were sending the correct version. That's proofing as well, but that's proofing of the Power Point to make sure it's correct."), Tr. 236-237, 321, Exh U; (7) communicating with clients and the studio about writing up original graphics and/or revising existing graphics and interfacing with trial technicians to make sure everything was in the courtroom so that the demonstrative exhibits could be used by the clients, Tr. 203, 256, 263; (8) sending out marketing letters and brochures and doing LEXIS research to find new business for VisuaLex business, Tr. 213-214; (9) project management, Exh. U; (10) sitting in on meetings and calls and reviewing pleadings, depositions, expert reports, patents, and other materials to make sure that she understood the case (having this information helped plaintiff "understand and grasp what the case was about"), Tr. 248-251, 310. Plaintiff also conceded at the trial that she did "true consulting" on some cases, such as the CSX cases, AlphaPharma, Sobieski, Baxter, CIEA, Tr. 250, 253, 262, 302, 304-305.

---

[4] When the Court asked Plaintiff "how would you describe your job," Plaintiff testified: "[a] lot of facilitating the process of getting the graphics through the studio." Tr. 307-308.

According to Plaintiff's testimony, the primary thing she did all day was work relating to the "revision stage of the graphics." Tr. 267-268. It was her job to look at the client's requested revisions and to think about them critically. Plaintiff's job was to analyze whether in her expertise and opinion the requested revision should be done and to determine if it had the effect that it was intended to have, that is to further the intended graphics takeaway. Tr. 267-270. At all times, Plaintiff's job as a consultant was to look critically at revisions on established graphics, to look critically at new graphics, and to make determinations as to whether the requested actions or changes were consistent with Plaintiff's belief as to what resulted in the best visual presentation of the evidence. Tr. 269-270, 302, 311-314. Plaintiff was doing the consulting work that she testified about for the purpose of making recommendations to VisuaLex's clients about the persuasiveness of their arguments. Tr. 271. This was done for the purpose of giving advice to help VisuaLex's clients, law firms, win their cases. Tr. 271. Plaintiff conceded at the trial that the demonstrative exhibits that she was consulting with clients about have "high importance" and that they can "impact the outcome of the litigation." Tr. 315.

All of the foregoing duties and responsibilities testified to by Plaintiff, and described by her in her timesheets, fall squarely within the administrative exemption. As set forth above, work "that relates to the assisting of the running or servicing of the business, as opposed to working on a production line" is exempt work. Plaintiff did not do the physical production of the demonstrative exhibits. That work is done by the non-exempt Designers. Plaintiff's own testimony, if it is to be believed, establishes that she "facilitated" the production of the graphics, did marketing work, and engaged in quality control work to ensure that the products produced (the demonstrative exhibits) were effective and error free. The regulations explicitly state that

this type of work, quality control, marketing, and advertising, is exempt. 29 C.F.R. § 541.201 (a) - (b).

Moreover, as this Court knows from previous submissions and discussion at trial, the work done by employees who are acting as advisers or consultants to their employer's clients or customers is also exempt. *See* 29 C.F.R. § 541.201 (c). Based on the evidence produced at trial, including Plaintiff's own testimony, she also acted as an advisor/consultant to VisuaLex's clients. Thus, Plaintiff did work directly related to the management or general business operations of VisuaLex, as well as work directly for VisuaLex's customers. Plaintiff's counsel argued to the Court that Plaintiff's work as a consultant does not fall within the administrative exemption. As demonstrated above, his argument is completely wrong and utterly misplaced. *See Austin v. CUNA Mut. Ins. Soc.*, 240 FRD 420 (W.D. Wis. 2006) (providing outside assistance to clients working on legal cases is not production line work. Court found that work performed by a case manager on a litigation team supporting outside clients was work that directly related to the general business operations of the employer's clients or customers). Similarly, managing client expectations and putting together a customized experience/product for a client is not production line work. *Hines v. State Room, Inc.*, 665 F.3d 235, 236-242 (1st Cir. 2011) (holding sales managers for a banquet facility that hosted wedding receptions and other social functions were exempt under the administrative exemption because working with the clients to "create a custom event in all of the particulars," "establish-long term relationships," keep the clients happy, and "maintain the overall reputation of the[] employer" were "ancillary to the principal function of actually providing the banquet," thereby not running afoul of the requirement that work under the administrative exemption be "directly related to the management or general business operations" of the employer.); *Swartz v. Windstream Comm.,*

*Inc.*, No. 10-3313, 429 Fed.Appx. 102 (3d Cir. May 25, 2011) (holding a sales engineer for a telecommunications company was exempt under the administrative exemption because the business of the company was to sell telecommunications systems. The plaintiff helped to design a telecom system for each customer that would meet the customer's "unique needs." He did not actually sell the systems himself, thereby servicing his employer's core business) *Cash v. Cycle Craft Co., Inc.*, 508 F.3d 680, 686 (1st Cir. 2007) (holding a "New Purchase/Customer Relations Manager" was exempt under the administrative exemption because "he focuses on improving customer service generally, by coordinating with various Boston Harley departments to ensure that customers were satisfied with their purchase and that they would provide Boston Harley with positive feedback reports" This employee "did not simply produce a product; [rather] he exercised independent judgment as he engaged in the company's business operations.").

At the trial, the Court authorized counsel for VisuaLex to submit highlighted versions of information on the timesheets. The highlighted timesheets are attached herewith as Exhibit A. Blue highlighting indicates work that falls within the administrative activities performed by Plaintiff (based on the description that she wrote in her timesheets, as well as her testimony at trial). The pink highlighting indicates the consulting work done by Plaintiff that also falls within the administrative exemption.[5] The chart summarizes Exhibit U pertaining to the administrative work Plaintiff did at VisuaLex based on Plaintiff's rendition and testimony of what her job was at VisuaLex.

---

[5] The pink highlighting on this chart does not take into consideration creativity and imagination, which is discussed immediately below.



At trial, at times, Plaintiff tried to minimize her job by testifying that she was not always the lead or primary consultant, but was the backup to Ms. Nawyn and Ms. Romano. On cross examination, however, it was revealed that: (1) Plaintiff was the "lead" and "primary" consultant on cases; and (2) irrespective of who was the "lead" or "primary" the job duties for all of the Graphics Consultants was the same. Tr. 99, 203-204. Moreover, even assuming arguendo that Plaintiff's work was reviewed or checked by Ms. Nawyn or Ms. Romano, this is irrelevant to the determination of whether Plaintiff was performing administrative duties. Having a micromanager does not annihilate the administrative exemption because the exemption does not specify how much discretion an employee must exercise, and it does not matter for purposes of the exemption whether the employee's decisions are reviewed or ultimately overturned by

supervisory employees. 29 C.F.R. § 541.202(c); *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626 (7th Cir. 2010). Additionally, the administrative exemption still applies even if Plaintiff's testimony that she rarely made decisions on her own with respect to graphics is believed. *Austin*, 240 F.R.D. at 430-431 ("Although plaintiff makes much of the fact that she relied heavily on the recommendations of outside counsel and rarely deviated from counsel's recommendations . . . it is undisputed that there were occasions (rare though they may have been) on which plaintiff rejected the assessment of counsel when it differed from her own. Plaintiff may have exercised her discretion conservatively, but she does not deny that she had the authority to act independently and to exercise discretion."); *see also Hines*, 665 F.3d at 239 (fact that employees followed a manual regarding how to sell and put on a successful banquet did not annihilate the applicability of the administrative exemption).

If Plaintiff's testimony about what her job at VisuaLex was is to be believed, then the undisputed evidence establishes that 100% of Plaintiff's job at VisuaLex was the performance of duties that are exempt under the administrative exemption. As such, the Court should conclude that VisuaLex properly classified Plaintiff and enter judgment in favor of VisuaLex.

### C.     The Creative Professional Exemption - Analyzed Independently

Plaintiff's work at VisuaLex also satisfies the primary duty requirements under the creative professional exemption. To be exempt under this exemption, a person's primary duty has to involve "invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." 29 C.F.R. § 541.302. Painters who are given the subject matter of their paintings are exempt under this provision of the white collar exemptions. 29 C.F.R. § 541.302. Cartoonists who are told the title or underlying concept of a cartoon are exempt under this provision. Similarly, journalists who analyze and interpret events are exempt under this

exemption. *Id.*; *Freeman v. Ntl Broadcasting Co., Inc.*, 80 F.3d 78 (2d Cir. 1996); *Sherwood v. Washington Post*, 871 F. Supp. 1471 (D.D.C. 1994).

The evidence at trial established that the primary job of the VisuaLex Graphics Consultant is to review and analyze case materials to conceptually create and develop the most effective visual strategy to help trial teams communicate their case to the trier of fact, for the obvious purpose of helping the clients get a win for their client. Tr. 40, 43-45, 53. The primary duty and responsibility of the people hired to work as Graphics Consultants at VisuaLex was, and is, to come up with creative and strategic ways of depicting the case information in a visual format that will help the trial team advance its case in the most effective way possible. Tr. 53, 66, 71-72, 76-77, 136-137, 186, 196, 241, 248-249, 256-257, 262, 267, 316, 320-321. This invention, imagination and analysis is applicable at every stage of the process, whether or not the Graphics Consultant is working on an original or a revision. Tr. 267-270, 302, 311-314. Plaintiff admitted at the trial that this was her job as a Graphics Consultant and that when she created concepts for the demonstrative exhibits she was working on, the ideas came from her imagination. Tr. 267. Plaintiff's job required her to analyze and interpret materials in order to conceptualize, create and imagine the graphics to use. Tr. 71-72, 196, 241, 248-249, 320-321. After Plaintiff and the other Graphics Consultants conceptualized the underlying concepts, they directed the Art Director and the studio to execute their ideas. Tr. 53-54, 267, 316, 320. The work that Plaintiff did relating to the creative aspect of the duties she performed at VisuaLex is described in her timesheets. The graph below, based on Exhibit U, shows the percentage of time that Plaintiff spent doing true creative work if she was doing the job of Graphics Consultant that she was hired to do and was paid a salary of $75,000 a year to do.



TIME ENTERED BY KADDEN EXCLUDING PTO and ADMINISTRATIVE "GENERAL" and TIMEKEEPING        MAY 26, 2008 - MAR 27, 2011

**Creative Professional Exemption**
*Total Productive Hours: 2,936.9 hours*

**Work involving
"INVENTION, IMAGINATION,
ORIGINALITY or TALENT"**
*1,360.7 hours (46%)*
– Client meetings, calls, correspondence
– Reading case materials
– Creating and reviewing new graphics
– Revisions to existing graphics
– Research content to be used
   in graphics

**46%**
1,360.7 HOURS

Plaintiff's duties as a Graphics Consultant, are like that of the cartoonist, journalist, painter found to be exempt under the regulations for this exemption. Her duties were also like that of an executive chef, another position that has been found to be exempt under the creative exemption because he or she conceptualizes recipes and menus. In its most basic terms, and according to Plaintiff's testimony at trial, the primary job of the Graphics Consultant is to conceptualize demonstrative exhibits. The Graphics Consultant is like the executive chef that conceptualizes what the menu is going to consist of, and the Designers are like the line cooks who actually prepare the food on the menu, doing the production line work. See DOL Field Operations Handbook, Section 22i10 (stating that a chef whose primary duty is creating and designing unique dishes and menu items is eligible for exemption under creative professional exemption). Like the line cook, the Designers at VisuaLex are non-exempt, since they just follow the orders and the directions of the Graphics Consultants like Plaintiff. Tr. 53-54, 136-

137, 241, 256-257, 262, 267, 316, 320.  Based on the undisputed evidence elicited at trial, the Court should find that the job of Graphics Consultant involves "invention, imagination, originality."  The Court should also conclude that the exemption is applicable because, it is beyond cavil, that trial graphics are now a recognized field of artistic or creative endeavor.  Tr. 55, 350.

### D.      The Learned Professional Exemption – Analyzed Independently

The learned professional exemption is available for employees who are hired based on advanced specialized degrees if that advanced knowledge is used in connection with their performance of their job.  29 C.F.R. § 541.301(a).  It is clear under the law that job titles do not control, and that an employer can have two people with the same job title with one qualifying for the learned professional exemption and one not qualifying.

In addition to satisfying the salary basis test, in order to be classified exempt under the learned professional exemption, the employee in question, Plaintiff in this case, must have performed work that is intellectual in character and which requires the consistent exercise of discretion and judgment.  The individual must also have advanced knowledge in a field of science or learning, such as law, medicine, nursing, accounting, actuarial computation, engineering, education, and various types of physical, chemical, and biological sciences; and the advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.  29 C.F.R. § 541.301(b).

In 2008, VisuaLex was looking to hire a Graphics Consultant.  Tr. 56.  The Cowen Group, a headhunting company, forwarded a cover letter and resume of Plaintiff to VisuaLex for consideration for the Graphics Consultant position.  Tr. 56-7, Exh. C.  The documentation sent over from the Cowen Group specifically highlighted and indicated that Plaintiff had an advanced degree.  The Cowen Group did this because VisuaLex advertised the position as one for which

an advanced degree was preferred.  The documentation sent by the Cowen Group advised that Plaintiff had gone to law school and had a Juris Doctorate degree. Tr. 57-8, Exh. C.  Based on this, as well as other criteria, VisuaLex brought Plaintiff in for an interview.  At the interview, Plaintiff spoke about, among other things, her advanced education. Tr. 59, 189-90.  Ultimately, VisuaLex decided to hire Plaintiff.  Her hiring was consistent with the undisputed fact that every single Graphics Consultant hired prior to Plaintiff had an advanced degree.  As the evidence demonstrated, Theodore Gipstein had a J.D. degree, Theodore "Chip" Walker had a J.D. degree, and Marilyn Wesel had a J.D. degree.  All of the other Graphics Consultants, Ms. Romano, Ms. Nawyn and Ms. Matthiesen all held one, and sometimes two, Master's Degrees. Tr. 42, 45, 48-50, 52, Exhs. AA, Y, X, W, Z.

It is standard in the industry for Graphics Consultants to have an advanced degree.  In the experience of Ms. Romano, Plaintiff and Mr. Mykel, prior to their joining VisuaLex, every person that they knew of who worked as a Graphics Consultant had an advanced degree and education well beyond high school and college. Tr. 38, 40-45, 314-315, 348, 351.  Ms. Romano testified that as of 2008, and after almost 20 years in the business, Ms. Romano was not aware of any person working as a Graphics Consultant who did not have an advanced degree - of either a Juris Doctorate degree or a post graduate degree in social sciences. Tr. 38, 40-45, 49, 185.

Plaintiff has consistently urged this court to disregard the learned professional exemption due to the fact that Heather Moran, a person hired after Plaintiff left VisuaLex, did not have an advanced degree.  This is of no moment, however, and does not mean that the learned professional exemption, either in isolation or in the aggregate with Plaintiff's creative and administrative duties, does not apply.  As we know from the regulations and the opinion letters issued by the Department of Labor, the mere fact that one employee holds the same title as

29

another employee, and the two do not have the same educational background, does not preclude a finding that the person with the advanced degree is exempt. What matters for determining whether Plaintiff is exempt is whether she was hired based on her advanced degree. 29 C.F.R. § 541.301(e)(7) ("Paralegals . . . generally do not qualify as exempt learned professionals because an advanced specialized academic degree is not a standard prerequisite for entry into the field . . . However, the learned professional exemption is available for paralegals who possess advanced specialized degrees in other professional fields and apply advanced knowledge in that field in the performance of their duties. For example, if a law firm hires an engineer as a paralegal to provide expert advice on product liability cases or to assist on patent matters, that engineer would qualify for exemption.").

In addition to satisfying the requirement of possessing an advanced degree, the evidence proved that Plaintiff satisfied the other necessary criteria to apply the exemption, again either individually or in combination with the others. The work done by VisuaLex's Graphics Consultants is of a highly sophisticated nature, and it is the business judgment of VisuaLex that persons who have an advanced degree are better able to perform the job of a Graphics Consultant. The undisputed evidence established that persons with advanced degrees are better able to review and understand incredibly complex and difficult legal and factual concepts. The advanced degree allows, under most circumstances, the Graphics Consultant to review, analyze, digest, and synthesize complicated case materials, and allows the Graphics Consultant to interact on the same level as VisuaLex's clients, highly sophisticated lawyers.

The VisuaLex Graphics Consultant is constantly required to exercise discretion and judgment. The undisputed evidence established that the Graphics Consultants regularly read case materials, including pleadings, depositions, expert reports, medical records, and patents. Tr.

30

71-72, 196, 248-249, 251, 320-321.  This highly complex information is then processed by the Graphics Consultants and reformulated into information that can be distilled and easily understood by a trier of fact.  Tr. 71-72, 186, 196, 248-249, 251, 256-257, 316, 318, 320-321.

The cases relied on by Plaintiff in closing argument as to why the learned professional exemption should not apply are inapposite to the case at bar.  *Solis v. Washington*, 656 F.3d 1079 (9th Cir. 2011), a case cited by Plaintiff, is not analogous to the case at bar.  In *Solis* the educational requirement for the employees in question was a generalized bachelor's degree, it was not an advanced degree like the degree held by Plaintiff and the Graphics Consultants all hired before her.  *Fife v. Harmon*, 171 F.3d 1173 (8th Cir. 1999), another case sited by Plaintiff, is equally unavailing because the position in that case had a requirement of a college degree <u>or</u> four years experience, very different than the Juris Doctorate Degree or a Master's Degrees held by the VisuaLex Graphics Consultants.  In short, the cases relied on by Plaintiff, are not even slightly analogous to the facts surrounding Plaintiff and her employment at VisuaLex.  Simply put, there was not one iota of evidence introduced at trial to even suggest that the work done by the Graphics Consultants, including Plaintiff, was work that is **not** predominantly intellectual in character and which requires the consistent exercise of discretion and judgment.  *Id.*  The testimony established the exact opposite.  *See* Tr. 65, 70-98, 100-101, 196, 242, 243, 248-251, 253, 302, 262, 302, 304-305, 320-321, 334-339.  For all of the foregoing reasons, in considering Plaintiff's status, the Court should include consideration of Plaintiff's advanced degree.

E.      <u>**Plaintiff Is Exempt under the Combination Exemption**</u>

As set forth at the beginning of this brief, even if the Court determines that Plaintiff does not fit neatly into the administrative, creative, or learned professional category, she is still properly classified as exempt under the combination exemption.  An employee may be properly classified as exempt if her primary duties, in the aggregate, represent indicia of exempt work.  29

C.F.R. § 541.700.  As previously discussed, the combination exemption allows employers to

cobble together duties from a variety of exemptions.  29 C.F.R. 541.708; *IntraComm, Inc. v.*

*Bajaj*, 492 F. 3d 285, 294 (4th Cir. 2007) ("[T]he combination exemption addresses the situation

that exists when an employee does not meet the primary-duty requirement of any individual

exemption.  In such cases, an employee may nonetheless be exempt from the FLSA's [overtime]

requirements pursuant to the combination exemption, which permits considering different

exempt duties together for purposes of meeting the primary-duty test.   Thus, an employee

performing duties that fall under more than one individual exemption, none of which separately

represents her primary duty, may be exempt under the combination exemption if those duties,

when combined, constitute her primary duty. . . . In other words, the combination exemption

provides a mechanism for cobbling together different exempt duties for purposes of meeting the

primary-duty test."); *see also Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, (7th Cir.

2010) (finding employee exempt under a combination of the outside sales and administrative

exemptions); *Mota v. Imperial Parking Sys.*, No. 08 Civ. 9526, 2010 WL 3377497 (S.D.N.Y.

Aug. 24, 2010) (finding employee exempt under executive and administrative exemptions);

*Pinillia v. Northwings Accessories Corp.*, No. 07-21564-CIV-HUCK/SIMONTON (S.D. Fl.

Nov. 13, 2007) (finding employee exempt under a combination of the executive and professional

exemptions).  *See Chambers v. Sodexo, Inc.*, No. 5:10-cv-77, 2012 WL 1098605, at *6 (S.D.

Miss. Mar. 30, 2012)(finding the Executive Chef exempt under combination of the

administrative and executive exemptions[6]).  The Graphics Consultant is like the executive chef

that conceptualizes what the menu is going to consist of, and the Designers are like the line

---

[6] It does not appear based on the opinion in *Chambers* that the parties or the Court addressed the
creative professional exemption.  However, based on the DOL Fieldbook referenced above, it
appears that in addition to the executive and administrative exemptions excluding the *Chambers*
plaintiff from overtime, he may be exempt under the creative.

cooks who actually prepare the food on the menu, doing the production line work.  Like the line cook, the Designers at VisuaLex are non-exempt, since they just follow the orders and the directions of the Graphics Consultants like Plaintiff. Tr. 53-54, 136-137, 186, 137, 241, 256-257, 262, 267, 316, 320.

Combining all of Plaintiff's administrative, creative, and learned professional duties, based again predominately on her own written description of her work, Plaintiff's duties throughout the entirety of her employment at VisuaLex, can be best depicted as follows:



The graph shows that all of Plaintiff's work, whether she was doing the job as a Graphics Consultant the way it is supposed to be done or not, fell directly under the exempt type of work recognized under the administrative exemptions and the creative professional exemption.  Under

the regulations, "the term 'primary duty' means the principal, main, major or most important duty that the employee performs." In this regard, it was undisputed at the trial that the most important part of Plaintiff's job as a Graphics Consultant was for her to use creativity, imagination, knowledge, and discretion to sift through the voluminous amounts of information that she was given (either verbally or in writing), and to pick out the things that she believed needed to be visually supported. Once Plaintiff identified issues that needed to be visually supported, it was her job to come up with creative ways, strategic ways of not only how to depict the information in individual graphics, but also to make sure that the visual framework that was being created was going to assist the trial team in advancing its case in the most effective way possible, with the obvious goal of trying to help them win their case. Tr. 186, 126, 257, 317, 323. Moreover, irrespective of whether a graphic put into the studio is an original or a revision to an existing demonstrative exhibit, the Graphics Consultant, when doing his or her job correctly, is always exercising independent discretion and judgment in critically analyzing, making decisions, and recommendations to VisuaLex's clients. Tr. 66, 68-70, 117-23, 268, 353. The independent evaluation and judgment is done constantly. Tr. 68. What you are doing as a consultant is constantly evaluating and making recommendations – "does this do what it's supposed to do," convey the intended take away, and if the answer to that question is yes, then the second question is "does it do it in the best way possible." If the answer is no, then the Graphics Consultant has to come up with a recommendation on a different approach. Tr. 68, 122, 128, 268. (In this regard, Plaintiff conceded that when she was working with revisions, as opposed to drafting of original exhibits, she was still "supposed to be looking at the client's revisions and thinking about them critically," and that she was 'analyzing whether or not in [her] expertise that revision should be done or it might not have the effect" that was intended. Tr. 268.

This principle job of the Graphic Consultant falls squarely within the creative exemption, as well as the administrative exemption, wherein Plaintiff is consulting and making recommendations both internally at VisuaLex and to VisuaLex's client. Tr. 268. Plaintiff concedes that whether she was the lead, the primary, or the third Graphics Consultant, she was supposed to render her opinion to her colleagues if the exhibit was "doing" (i.e. achieving) what it was supposed to do. Tr. 268. This primary duty falls smack into the heart of the creative and administrative exemption.

This main, most important job for the Graphics Consultant, coupled with Plaintiff's testimony that her job also consisted primarily of "facilitating the process" even if believed, makes the application of the administrative exemption even more apparent, with or without the combination of the other duties. Taking Plaintiff's own testimony and time sheets, in addition to conceptualizing trial graphics, she was responsible for facilitating the process of getting the graphics through the studio, overseeing the team of studio staff employees, engaging in quality control, such as proofreading graphics, managing client expectations and relationships, reviewing PowerPoint presentations for purposes of quality control to ensure that the clients were receiving the right items, communicating with clients and managing client expectations, marketing, and project management. Tr. 53-54, 136-137, 203, 213-214, 233 -234, 236-237, 241, 248-251, 254-256, 260, 262-263, 302, 307, 308, 310, 321, Exh U.   As previously discussed, these types of duties and responsibilities are the heart and soul of the administrative exemption as discussed in the Regulations - work that "directly relates to the management or general business operations of the employer" is work that relates to the assisting of the running or servicing of the business, as opposed to working on a production line. Such work includes (but is not limited to) work in areas such as quality control, marketing, and advertising. 29 C.F.R. §

541.201 (a) - (b).  The administrative work may include "[a]n employee who leads a team of other employees assigned to complete major projects for the employer . . . even if the employee does not have direct supervisory responsibility over the other employees on the team." 29 C.F.R. § 541.203(c).  These responsibilities, again as described by Plaintiff, coupled with the creative exemption, whether analyzed independently or in the aggregate, constitute exempt work under the white collar exemptions. Add to the mix, Plaintiff's advanced degree, and the fact that she earned $75,000 a year, and between $30,000 and $40,000 more than the salaries received by VisuaLex's non-professional employees, it is irrational to conclude that the FLSA, which was enacted "to prevent wage exploitation of some of the most vulnerable workers in our society," is intended to protect Graphics Consultants like Plaintiff.  Tr. 134.  *See Christopher, et al. v. SmithKline Beecham Corp.*, No. 11-204, 132 S. Ct. 2156, 2173 (U.S. June 18, 2012) ("Petitioners - each of whom earned an average of more than $70,000 per year . . . are hardly the kind of employees that the FLSA was intended to protect.")  *See also Altemus v. Federal Realty Investment Trust,* 2012 WL 3090915 (4th Cir. July 31, 2012)(finding the Executive Assistant to the CEO, whose job was to make all necessary travel arrangements, screen incoming phone calls, coordinate Trustees meetings, prepare slides and handouts for meetings, and assist the CEO, exempt under the administrative exemption.)   As in all of the cases, relevant to the Fourth Circuit's very recent decision, which was issued weeks after the Supreme Court's decision in *Christopher*, the Executive Assistant plaintiff in *Altemus,* earned a high salary ($84,000), raising doubt that the plaintiff fell within the scope of the intended protected class in light of the legislative goals of the FLSA. "(A)lthough salary alone is not dispositive under the FLSA, ... the FLSA was meant to protect low paid rank and file employees." Indeed, the FLSA's regulations state that "(a) high level of compensation is a strong indicator of an employee's exempt status."

36

This is similar to the rationale not only in *Christopher*, but also to the Third Circuit's decision in *Parker v. Nutrisystem Inc.*  In *Parker*, call center employees were found to be exempt.  In so holding, the Court found that the employees, who earned between $40,000 to over $80,000 a year, "were not the lower-income type employees contemplated to be protected by the overtime provisions."  As a professional employee working at VisuaLex, Plaintiff was compensated at a rate of $30,000 and $40,000 more than the salaries received by the non-professional employees. Tr. 134.  This, considered along with all of the other facts, is compelling evidence that the job of a Graphic Consultant is exempt under the white collar exemptions.

## CONCLUSION

As stated in Defendant's closing argument, this case comes down to fairness, equity and justice.  Plaintiff was hired because of her J.D. degree and experience with trial graphics. Plaintiff herself concedes that every Graphic Consultant that she worked with at Doar and VisuaLex had advanced educational degrees.  It is also undisputed that in Ms. Romano's more than 20 year's experience, in her entire career she has only ever known one person that was hired to work as a Graphic Consultant that did not yet have an advanced degree (although Ms. Moran, who was hired after Plaintiff, did have a college degree and had completed courses towards her Master's Degree).  The undisputed testimony from Ms. Romano, Plaintiff, and Mr. Mykel, was that not one of them, in their many many years of experience in the field of trial graphics, ever knew a person that worked as a Graphics Consultant that did not have an advanced degree. Likewise, not one of these people had ever known a Graphics Consultant that was considered non-exempt and that received overtime pay.  In this day and age, it seems beyond improbable that an entire industry has paid every Graphics Consultant improperly, and that the DOL never initiated any enforcement actions with respect to Graphic Consultants or otherwise suggested that it thought the industry was acting unlawfully. It is quite telling that Plaintiff did not receive,

37

nor believe that she was entitled to overtime, when she worked as a Graphics Consultant at her prior employer, Doar.   This case boils down to one simple fact:   VisuaLex made a business decision when it opened its doors to pay its professional staff incentive compensation in the form of overtime, something unheard of and unprecedented in the litigation support industry.   (Tr. 38-45, 60-61, 314)   The legacy of this case should not be "No good deed goes unpunished."   For many, many years, when business was good, that professional staff got to enjoy the bounty that would typically go to small business owners.   When the economy and business tanked, Ms. Romano and VisuaLex could no longer afford the luxury of paying the bonus incentive compensation to the "at will" professional staff.   This appears to be the true motivation behind this case.   Plaintiff, an "at will" employee, is angry and disappointed that business circumstances necessitated a change in her compensation.   This Court can be sure, however, that there is no one that is more disappointed about the necessity to change the incentive compensation than Ms. Romano.   If economic circumstances allowed, and business was good, VisuaLex would not have been forced to suspend its incentive compensation.

Not only would it be horrific if the legacy of this case is "no good deed goes unpunished," much worse will be the impact on the hundreds of people in the industry that currently (and historically) have been treated and respected as professional employees and, most importantly, receive commensurate salaries and flexibility in the workplace, coming and going without getting their time micromanaged and without getting their paychecks cut every time they come in late, or want to leave early.   Even assuming small businesses like VisuaLex could stay in business after an onslaught of litigations from every prior and current Graphic Consultant working for them, which most could not, no good will come out of an entire professional

industry having to roll back salaries of Graphic Consultants to better align the salaries with those earned by non-exempt employees.

For all of the foregoing reasons, it is respectfully requested that this Court find Plaintiff exempt and direct judgment in favor of VisuaLex.

Traycee Ellen Klein