## EPSTEIN BECKER & GREEN, P.C.

ATTORNEYS AT LAW
250 PARK AVENUE
NEW YORK, NEW YORK 10177-1211
212.351.4500
FAX: 212.878.8600
WWW.EBGLAW.COM

October 4, 2012

**VIA ECF AND HAND DELIVERY**
The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

Re: Adina Kadden v. VisuaLex, LLC (11-CV-4892) (SAS)

Dear Judge Scheindlin:

In accordance with your Opinion and Order dated September 24, 2012, VisuaLex, LLC ("VisuaLex") submits this letter to address: (1) how many unpaid hours of overtime Kadden worked and (2) whether VisuaLex is entitled to an offset.[1]

1. The Maximum Amount of Overtime Hours is 338.4:

During Kadden's employment she kept track of the time she worked. Kadden testified (at either her deposition and/or at trial, or both) that the process she used to keep track of time was: (1) writing down in longhand her time, which she referred to at her deposition as her "handwritten time sheets" and (2) then inputting time into Quickbooks, VisuaLex's computerized time system. In the Court's Findings of Fact, at page 11, the Court found that "Graphics consultants were required to be in the office Monday through Friday from 9 a.m. to 6.p.m. for standard work hours." In connection with this requirement and the time inputted by Kadden into VisuaLex's time system, Kadden always accounted for eight hours a day, whether or not she worked eight hours a day. Plaintiff admitted in this litigation that she kept her handwritten time sheets on a daily basis, that she input time into Quickbooks "every two weeks," and that she did not keep all of her handwritten time sheets, just the ones she produced in discovery.[2]

---

[1] This letter submission is not an admission by VisuaLex that Kadden is entitled to any overtime. Rather, it is submitted to comply with the Opinion and Order.

[2] Regarding time keeping, the following Q & A occurred at Plaintiff's deposition: "Q. How did you keep track of your time? And what I mean by that, was it a daily basis? Did you, as you finished a project, did you input your time at that moment? A. Right. So the way I did it was I created a grid. I did this on my own. I just created a grid that had several -- I think four or five columns in it, and I printed that grid out, and I had that sitting on my desk all day, every day. And as things went on in the office, I would fill in on the grid, start time, end time, what I did, and what case it was for. I believe it was every two weeks or so the bookkeeper, Debbie, would

The Honorable Shira A. Scheindlin
October 4, 2012

In this lawsuit, based on the Quickbooks data Kadden inputted, she claims that she worked 416.7 productive hours over 40 a week during the time period from April 1, 2009 to March 31, 2011. This is not accurate. Based solely on the handwritten time sheets that Kadden produced, the 416.7 hours of requested overtime must be reduced by 78.3 hours. The reduction of the 78.3 hours is due to the fact that Kadden entered into Quickbooks 78.3 hours more than she actually worked (according to her own handwritten contemporaneous time sheets). Based on Kadden's own records, the total amount of overtime Kadden could have worked (at most) is 338.4. In relation to the overture of the 78.3 overtime hours requested by Kadden, VisuaLex refers the Court to the Quickbooks time sheets, which were admitted as Defendant's Exhibit U at trial, and the handwritten time sheets produced by Kadden during discovery, which the Court found to be party admissions.[3] (Tr. 109 -110). Copies of Kadden's handwritten time sheets, PL 0195 – PL 0513 and PL 0523- PL 0552, are submitted with this letter so that the Court can see the difference in time between what Kadden is requesting as overtime and what her actual hours were on the days in question. If the Court would like, Defendant is happy to provide a chart showing the Bates number of each time-written record that conflicted with one of the records Kadden inputted into Quickbooks (and the corresponding Bates number of that record).[4]

    2.    **The 338.4 Hours of Maximum Amount of Overtime Should Be Offset by the $15,878.29 Overpayment Kadden Received**

As the Court knows, based on the undisputed testimony presented at trial, during Kadden's employment with VisuaLex, VisuaLex distinguished between its professional staff and non-professional staff. Among many other differences, the professional staff received significantly higher compensation than the non-professional staff. (Tr. 133). Specifically, the professional staff received salaries that were $30,000.00 to $40,000.00 more than the non-professional staffs' salaries. (Tr. 134). This means that because VisuaLex understood and believed Kadden to be part of the professional staff, and paid her a salary at the level of a professional $75,000.00, Kadden was paid more than double the annualized compensation paid to non-professional staff. (Tr. 135). In addition to her significantly high compensation that Kadden would not have received if she were a non-exempt employee, Kadden also enjoyed other benefits, including coming and going as she wanted, while still getting paid the same guaranteed salary, and paid time off in the form of additional vacation, personal, snow and comp days.

The Court has concluded that Plaintiff should have been paid as a non-exempt hourly employee. Kadden has already received the windfall of the more than $30,000.00 to $40,000.00

---

send out an e-mail to everyone saying I need your time in, into QuickBooks. And then I would tally up my time on this kind of grid that I had created."

[3] 416.7 hours entered into Quickbooks minus 338.4 hours of actual time worked based on her handwritten time sheets equals a difference of 78.3 hours.

[4] All of the numbers in this letter are based on a good faith review of Plaintiff's handwritten notes. Margaret Thering, an attorney admitted in this Court, reviewed Kadden's notes to the best of her ability, and upon information and belief, believes the calculations to be accurate. Where applicable, Ms. Thering rounded the numbers to the nearest tenth. Ms. Thering is happy to submit an additional affidavit to this point should the Court so desire.

FIRM:19357037v1

The Honorable Shira A. Scheindlin
October 4, 2012

dollars a year based on the belief that Kadden was a professional employee. Kadden should not now also receive the additional windfall of being allowed to keep the money that was improperly advanced to her on the belief that she was an exempt employee. In order to avoid an unjust result in misclassification cases, based on general rules of equity and fair dealing, the FLSA and case law provide that if an employee gets more benefits than she would have been entitled to as a result of having been misclassified as exempt, the employee seeking to change that classification must return those benefits to her employer. *See, e.g., Singer v. City of Waco*, 324 F.3d 813 (5th Cir. 2003); *Mumphrey v. Credit Solns of Am., Inc.*, No. 3:09-cv-1208-M, 2010 WL 2216526, at *1 (N.D. Tex. June 1, 2010) (holding prepaid wages are appropriate offsets in FLSA actions); *Bray v. Dog Star Ranch*, 2010 U.S. Dist. LEXIS 21983 (W.D. Mich. March 2010). Based on principles of fairness and equity, the overpayment and benefits VisuaLex paid to Kadden because she was believed to be exempt should be offset against the 389.4 overtime hours.[5]

> a. $4,919.30 Should be Offset From the Overtime for Wages Related to Overage of Vacation, Personal, Snow and Comp Days Kadden was Not Entitled to Receive.

During Kadden's employment, she was eligible for 10 vacation days a year (accruing on a monthly basis 6.67 hours per month, which equates to 80.04 hours a year). She was also eligible for two personal days a year (accruing at the rate of 1.34 hours a month, which equals 16.08 hours a year). In her first year of employment Kadden used 82.7 hours of vacation time and 17.8 hours of personal time. Thus, for year one Kadden received payment for 4.38 hours of paid time off to which she was not entitled.[6] Plaintiff also was paid for 7.8 hours for time she took off due to weather (snow), even though the office was open and other employees came to work. Kadden would not have been paid for this snow time or her overage of vacation and personal time if she had been classified as non-exempt. The extra money that Kadden was paid for the 12.18 hours is $439.21. The $439.21 erroneously paid to Kadden should be offset against any overtime payments determined by the Court.

In her second year of employment Kadden used 72.7 hours of vacation time and 30.5 hours of personal time. Thus, in year two Kadden had 7.34 hours of unused accrued vacation, which pursuant to VisuaLex's policies gets carried over to the following year, and she was paid for 14.5 hours of personal time that she would not have received if she was a non-exempt employee. This 14.5 hours equals $522.87, which should be offset from any overtime found to be due and owing to Kadden.

In year three, Kadden accrued only 66.7 hours of vacation since she only worked 10 months out of the 12 months of the accrual year (6.67 x 10 = 66.7), plus Kadden carried over the 7.34 hours of unused accrued vacation from year two. For the 10 months of her employment in year three, Kadden also earned 13.4 hours of personal time. Thus, Kadden's total earned

---

[5] At all times during her employment, Kadden was paid, at a minimum, a straight salary of $75,000.00. Based on 40 hours a week, 52 weeks a year (2080 hours a year), Kadden's salary equaled an hourly rate of $36.06.

[6] (80.04 vacation hours − 82.7 hours of used vacation) + (16.08 hours of personal time − 17.8 hours of personal time)

- 3 -

The Honorable Shira A. Scheindlin
October 4, 2012

vacation and personal time off benefit in year three entitled her to 74.04 hours of vacation time and 13.4 hours of personal time. Pursuant to VisuaLex's policies and procedures, accrued unused vacation is paid out at the time of separation of employment, but personal time is never paid out to employees. In Kadden's final year of employment, a review of her handwritten timesheets establishes that she used a total of 61.5 hours for vacation and 8.3 hours for personal matters[7]. Thus, at the time that Kadden was terminated, she was only entitled to receive payment for 12.54 hours of unused vacation time; however, because she misrepresented her time in Quickbooks, at the time of termination of her employment, Kadden was paid for 54.88 hours of accrued unused vacation when in fact she only had a balance of 12.54 hours of accrued unused vacation. Thus, Kadden was paid for 42.34 hours of vacation time that she was not entitled to receive. This 42.34 hours equals $1,526.78, which should be offset from any overtime payments awarded to her.

Additionally, in year three, Kadden was paid $901.50 for 25 hours of time that she described as weather related/snow. The office was open during these days and the other employees worked. As a non-exempt employee that did not report to work on a regular work day Kadden was not entitled to be paid the $901.50 that she received. This $901.50 payment that she received should be offset now that she has been determined to be an hourly employee.

Also, in year three Kadden also was paid for 42.4 comp hours, equaling $1,528.94. As was testified to at trial, only exempt employees are entitled to comp time off. As such, Plaintiff should not have received this money, and Defendant requests that the $1,528.94 improperly received by Kadden be offset against overtime found to be due to her.

Based on the foregoing, throughout Kadden's employment, she received an overpayment of $4,919.30 for vacation, personal, snow and comp days that she received solely on the understanding that she was an exempt employee. As such, the overpayment of $4,919.30 should be offset against the 338.4 hours of overtime.

> b. An Additional $10,958.99 Should be Offset From the Overtime for Prepaid Wages Related to Kadden Being Paid for Time She Did Not Work

In addition to being overpaid for vacation, personal, snow and comp days, based on the Court's finding of Kadden being a non-exempt employee, Kadden should not be entitled to keep the pay that she received for other hours paid but not worked because she was being treated as exempt and receiving a salary. Even though the workday at VisuaLex spans from 9:00 a.m. to 6:00 p.m., throughout Kadden's employment she regularly came into work after 9:00 a.m and left before 6:00 p.m. Irrespective, because she was considered exempt, her salary was not reduced, and she was therefore paid for this time. As described above, as a result of this

---

[7] The amount of hours allocated to vacation, personal, comp and snow days in this letter are based on Kadden's hand written descriptions on her time sheets. Because Kadden was considered and treated as a professional while working at VisuaLex, her time sheets were not monitored for accuracy, and it was assumed that she properly recorded her time. As a result of this lawsuit, and a review of the handwritten notes that she produced, it has been revealed that Kadden did not properly input or characterize her time off in Quickbooks.

- 4 -

The Honorable Shira A. Scheindlin
October 4, 2012

litigation, Plaintiff produced some of her handwritten timesheets. A review of those timesheets revealed that Kadden was overpaid for 300.21 hours that she did not work yet received $36.06 an hour for each of those unworked hours.[8] This means that VisuaLex paid Kadden $10,825.57 for time that she did not work. This time off and money overpaid as a result of her being considered exempt is separate and apart from hours and money related to Kadden's time off for vacation, personal, snow, comp and sick days.

Additionally, during her first week of employment (May 26 – June 1, 2008) Kadden only worked 36.3 hours, but was paid for 40 hours. The additional payment she received for 3.7 hours that she did not work should be offset from any overtime payments owed to her. This equates to $133.42.

Based on the foregoing, and the Court's holding that overtime must be paid at time and a half, the overtime payment after the offset is $8,350.43. (338.4 overtime hours x 36.06 x 1.5 [$18,304.06] minus offset for pre-paid wages [$15,878.29] equals $2,425.77). This amount - $2,425.77 - equals 44.85 hours of unpaid overtime.

Finally, since the Court has wide discretion in determining a reasonable date from which to award pre-judgment interest, it is respectfully requested that pre-judgment interest not be awarded to either party in this case due to the fact that Kadden had the benefit of earning interest and using the $18,304.06 that was improperly paid to her. *See Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994); *Pinzon v. Paul Lent Mech. Sys.*, No. 11-cv-3384, 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012). If the Court disagrees, and finds interest appropriate towards Kadden, it is respectfully submitted that the reasonable date from which to award pre-judgment interest is January 20, 2011, which is the midway point in the time period during which Kadden worked the last 44.86 hours of overtime.

Respectfully Submitted,

*Traycee Ellen Klein (MT)*
Traycee Ellen Klein

cc: Mark Risk, Esq. (letter only)
    Margaret C. Thering, Esq.

---

[8] The times that Plaintiff came in late and left early, but was paid, can be discerned from her handwritten timesheets. Examples of the time that make up part of the $10,958.99 that she was paid but did not work can be seen on documents produced by Plaintiff at PL 195, 213, 351, 364, and 434. If the Court so requests, counsel will submit a separate document listing the exact pages on which Kadden arrived late or left early so that the court does not have to go through the painstaking task of manually reviewing every page of handwritten notes (though Kadden arrived late or left early on a significant chunk of days). It should also be noted that since Plaintiff did not produce all of her handwritten time sheets, it is impossible for VisuaLex to determine the additional hours that Plaintiff did not work, yet got paid.

- 5 -