UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADINA KADDEN,

                Plaintiff,            11 CV  4892 (SAS)

      v.

VISUALEX, LLC,

                Defendant.

---

### DECLARATION OF MARK D. RISK IN SUPPORT
### OF MOTION FOR ATTORNEY FEES AND COSTS

      MARK D. RISK, an attorney licensed in New York, hereby declares under penalty of perjury pursuant to 28 U.S.C. § 1746:

      1.  I am principal at Mark Risk, P.C., counsel to plaintiff Adina Kadden.  Kadden seeks  statutory fees under the Fair Labor Standards Act, 29 U.S.C. §216(b), and  New York Labor Law §§198(1-a) and 663.  I attach the contemporaneous time records from this case. **Exhibit A**  hereto.  From the outset VisuaLex elected to litigate this matter very aggressively.  That decision had the effect of increasing Kadden's  attorney time charges and disbursements, for which she now seeks an award of fees and costs.  *See* **Exhibits B and C**; see *also* Trial Transcript at 5, 27;  Decision of September 24, 2012 at 31, footnote 129.

      2.  Adina Kadden contacted me for the first time in May 2011. VisuaLex had advised her in March 2009 that it would no longer pay her time and a half after 40 weekly

hours notwithstanding her written offer letter that had promised it. I agreed to represent her on a contingent fee basis. To this day I have never received any payment of fees from Kadden.

3. Kadden showed me the VisuaLex job description and her offer letter, and I reviewed the FLSA regulations. Based on that review, I concluded that it was likely that a prompt settlement would be reached with VisuaLex without the need for litigation.  Since a prevailing party under FLSA may recover attorney fees, there are strong incentives for employers to settle meritorious FLSA claims quickly, especially where, as here, the amount of overtime compensation at issue would be exceeded quickly by the potential claim for statutory attorney fees, plus the defense costs. Given the clear exposure to VisuaLex under the regulations in view of their own job description and offer letter, I do not understand why VisuaLex did not apply that logic in this case.

**Attempt At Pre-Litigation Settlement**

4. On June 16, 2011 I wrote to VisuaLex advising of the claim, inviting them to contact me to attempt to resolve it.  After I followed up by email, I received an email on June 27 from VisuaLex's counsel advising that Kadden's claims were "frivolous and without merit." "[I]f you commence a frivolous claim against VisuaLex. . . we will have no choice other than to seek sanctions, including attorneys' fees, against you for your bad faith conduct." **Exhibit B hereto.**  By letter of June 29 VisuaLex's counsel said that she "could confidently state that Kadden's demand for overtime pay is frivolous" and that "there is absolutely no good faith basis" for Kadden's claim.  The letter, **Exhibit C** hereto, did not cite any legal authority.  I was very surprised.  Calling a claim "frivolous"

is a serious matter, and I returned to the regulations to make sure that I had reviewed them sufficiently.

     5. Prior to filing the lawsuit, I wrote back a careful letter citing the applicable regulations for each of the claimed exemptions, and calling VisuaLex's attention to both the job description and the offer letter.  **Exhibit D.**  We filed the lawsuit on July 15.  Counsel declined to accept service for VisuaLex.  Already the professional time and fees were accumulating.

     6.  I decided not to request a jury trial, because the case turned on application of complicated Department of Labor regulations that seemed best undertaken by this Court.  I did not anticipate at the time that this decision would have the extra benefit of moving the case much more efficiently to a trial in 2012.

     7. VisuaLex filed its answer on August 11, asserting defenses that were ultimately ruled on by this Court – learned professional exemption, creative professional exemption, administrative exemption, "half time" or "fluctuating workweek" method, the "good faith" defense,  and  entitlement to "offsets" in the event that Kadden was found to be entitled to overtime pay.  As the time sheets indicate, legal research and ongoing review of the applicable regulations and the case law for each of these issues would be a time-consuming constant throughout the litigation, including during the trial.

     8. At the initial conference in Court on October 6, VisuaLex requested that the case be submitted to mediation before Magistrate Judge Francis.  At VisuaLex's request, the Court included in the referral a request that the mediation be held prior to October 25, on which date VisuaLex's lawyer was scheduled to leave the country for a trip. I sent a

letter to VisuaLex requesting production of some documents prior to mediation. VisuaLex declined to produce them.

### A Disappointing Mediation

9. Shortly before October 25, Judge Francis contacted us and hastily scheduled a mediation for October 24. I prepared a pre-mediation letter and submitted it earlier that day. The mediation was short and extremely disappointing. After one private session with VisuaLex, Judge Francis advised us that VisuaLex was not willing to offer even a five figure amount to settle the case.[1]

10. From October 25, 2011 until this Court issued its decision almost one year later on September 24, 2012, VisuaLex made no further offers of settlement, nor indicated any change in its position as stated before Judge Francis.

### Expeditious Pre-Trial Litigation

11. I attempted to litigate the case both thoroughly and efficiently. Documents were exchanged and we took only one deposition (of Lillian Romano), which lasted less than one day. We had some disputes about the production of documents by VisuaLex, which were raised by letter with the Court and resolved in Court without any motion practice. I was unsuccessful in obtaining the attorney client emails on which VisuaLex relied in asserting its good faith defense to its clam for liquidated damages, but the Court

---

[1] In *Mitchell v. City of Philadelphia*, 2010 WL 1370863 (E.D.Pa.2010), the court ruled that evidence of settlement discussions may be relevant to the issue of reasonableness of a requested fee award. *See also Lohman v. Duryea Borough*, 574 F. 3d 163 (3rd Cir. 2009).

ultimately ordered their production in a pre-trial ruling. VisuaLex conducted a long full day deposition of Kadden, that Kadden and I of course prepared for.

12. I wrote to the Court on March 15, 2012, setting forth the basis for a motion for summary judgment. At a conference in Court on March 21, the Court suggested that we proceed directly to trial. We agreed, and a trial schedule was set.

13. The pretrial papers, including the Memorandum of Law and Joint Pretrial Order, were submitted on June 21, 2012. This was a substantial job, and I was fortunate to have assistance from Avi Mermelstein, a newly minted 2012 graduate of Georgetown Law School with experience in employment law, including in wage and hour cases. He did much of the legal research and helped me with the pretrial brief.

14. Ms. Kadden assisted extensively in the trial preparation, including in the review of the VisuaLex time records and calculation of the overtime owed, performing services that in other cases would have required a paralegal. Lily Goodspeed, a rising senior at Brown University who has worked in my office in the summers for several years, spent about 33 hours working with the discovery documents and assisting in the calculation and preparation of the trial exhibits that summarized Kadden's hours and billed activities at VisuaLex. We are not seeking any compensation for Ms. Goodspeed's time.

15. Preparation of the Joint Pretrial Order was made more complicated by VisuaLex's insistence that I review and accept a very long "Statement of Undisputed Facts" that looked like a Rule 56 Statement in the summary judgment context. There was substantial back and forth between counsel. I tried to explain that this was not summary judgment practice. VisuaLex insisted that I had some professional obligation to respond

on a paragraph by paragraph basis, which would have taken many hours.[2]  Finally the impasse was resolved by my agreement that VisuaLex would attach its "alleged undisputed facts" as a rider to the Joint Pretrial Order. Late in the evening on the night the Joint Pretrial Order was due, VisuaLex sent me its final version of the rider – it had grown to 16 pages and 87 paragraphs in length.

16. In July, after the deadline set by the Court for motions in limine had passed, VisuaLex served a motion in limine seeking to exclude evidence about the other graphics consultants at VisuaLex, including Heather Moran, Kadden's replacement.  It also sought in essence a grant of summary judgment on Kadden's request for FLSA liquidated damages based on its "advice of counsel" defense.  The Court accepted the motion notwithstanding that the deadline had passed. We submitted answering papers. By opinion dated July 25, the Court ruled in Kadden's favor across the board, and this time directed that VisuaLex must produce the attorney client emails if it wished to assert "advice of counsel" as a defense to liquidated damages.

**Preparation For Trial**

17.  Preparation for any trial is demanding.  Kadden had moved to Baltimore in March 2012 to take a new job, and I began speaking with her by telephone at night to get ready.  I had spoken from time to time with Heather Moran, whom neither Kadden nor I had ever met.  Ms. Moran said she would testify about her job duties as a litigation graphics consultant. I thought that could be important on the issue of the consultants' job duties, because Ms. Moran's account of her job duties was similar to Kadden's. On

---

[2] On June 5, counsel for VisuaLex wrote by email:  "Mark — If you are acting in good faith you will have to stipulate to almost every one of the facts. . . ."

6

August 10, the Friday before trial, I travelled to Yonkers, where Ms. Moran works, so that we could meet in person briefly before trial. Kadden came to New York on the weekend before trial, which we spent together preparing her to testify.  Also, VisuaLex required that I serve trial subpoenas on Lillian Romano and any of its employees that I wished to call to testify, which increased both our time charges and disbursements.

18.  VisuaLex will no doubt argue that my time on this case was excessive. I remind the Court that VisuaLex brought four people to trial – two lawyers, a clerical assistant, and a technologist to handle the electronic exhibits. I could have legitimately utilized another lawyer for additional trial preparation activities, and at trial, but none was available. Ms. Kadden sat with me at counsel table and attempted to assist with the documents.

19. A review of the transcript will show that we presented our case efficiently – with fewer witnesses, and shorter examinations and opening and closing statements. After the first day of trial, at which the Court had indicated impatience with the speed of Lillian Romano's testimony, I worked with Kadden in my office to attempt to shorten her direct examination testimony.

**Unexpected Post Trial Submissions**

20. At the close of trial it was agreed that counsel would submit nothing further except to annotate the proposed findings of fact and conclusions of law that we had submitted before trial with trial transcript pages. The Court made it clear that it hoped to receive these submissions soon. In the days after trial, however, VisuaLex refused to split

with us a $277 charge for an expedited one week transcript.[3]  I now believe that VisuaLex had decided to submit a post trial memorandum of law, and was attempting to maximize its time to prepare it.

21.   On September 10, the day that the annotated findings/conclusions were due, VisuaLex submitted a thirty eight page brief.  In a telephone conference on September 13, the Court indicated that while the brief should not have been submitted, it could not be undone. It was agreed that I would submit a letter in response. When I asked for a week to do this, the Court indicated a desire to get it sooner, and so I made the submission, a six page letter, four days later on September 17.

22. The Court's decision on September 24 directed the parties to make an additional submission by letter on the issue of damages.  VisuaLex had indicated at trial that it wished to argue that Kadden's overtime hours should be reduced based on her handwritten notes, and had already argued that it was entitled to offsets for certain "snow days" and "comp time." That argument ignored the clear terms of the statute, which we had explained in our pretrial memorandum of law. I wrote in our October 4 submission that the cost of preparing the submissions on damages would surely exceed the amount reasonably in dispute.  Here again VisuaLex had made a tactical decision to litigate aggressively that had the effect of increasing Kadden's attorney time charges.

23. The Mark Risk, P.C. time entries indicate that I spent approximately i) 45.58 hours on the case through the mediation with Judge Francis on October 24, 2011; ii) 60.78 additional hours  through the conference in Court on March 21, 2012, in which it was agreed that we would forego summary judgment practice and go straight to trial; iii)

---

[3] We nevertheless paid the full $277 premium to obtain the expedited transcript.

122.19 additional hours, plus 39.50 hours by Mermelstein, through the submission of the pretrial papers on June 21, 2012; iv) 109.82 additional hours, plus 5.7 hours by Mermelstein, through the end of trial on August 15, 2012; and v) 67.98 additional hours, plus 10.35 hours by Mermelstein, on three post-trial submissions, plus this fee application.

### Setting an Hourly Rate

24.  The Court can evaluate my skills as evidenced by my work at trial and in the papers we submitted. Nevertheless I attach a resume **(Exhibit E)**, and comment very briefly.  I am a 1984 graduate of NYU Law School, and was admitted to the New York Bar in 1985. My legal experience has at all times been disproportionately devoted to labor and employment law and litigation.   I have jury trial and arbitration experience, and have argued federal and state appeals.  I teach in litigation skills programs for the National Institute for Trial Advocacy, including at in house programs at large law firms and government agencies, most recently in programs for lawyers at the Boston and Atlanta offices of the U.S. Securities and Exchange Commission and at the Pension Benefit Guaranty Corporation in Washington.

25. I am extremely active in the Labor and Employment Law Section of the American Bar Association, including as an editor of its quarterly newsletter, which circulates quarterly to about 20,000 lawyers and law students.  In 2008 I was inducted as a Fellow in the College of Labor and Employment Lawyers, an organization intended to recognize achievement and encourage civility and professionalism in our field.  I am a member of the Advisory Board of the NYU Law School Center for Labor and

Employment Law. I frequently write and speak on employment law and litigation subjects. I am AV rated, and am recognized in "SuperLawyers" and "Best Lawyers" rankings in employment law.

26. I request an hourly rate of $525 for my time. My regular hourly rate is $575, and I frequently charge that rate to employment law clients. During the period that I have represented Ms. Kadden, I have been retained in five litigation matters for clients paying on an hourly basis, at rates of $575, $575, $450, $500 and $500 per hour. I attach as **Exhibit F, G, and H** statements by John Beranbaum, Esq., Darnley Stewart, Esq., and Justin Swartz, Esq., experienced lawyers who represent employment plaintiffs in this Court, indicating that the rate of $525 is reasonable for employment lawyers practicing in the Southern District of New York for an attorney with my experience.

27. We seek $200 per hour for Mr. Mermelstein's time. He is a 2012 graduate of Georgetown Law School with experience in litigation and employment law. His research and analytical skills were in my view equivalent to those of an associate with substantially greater experience. His involvement, especially in the legal research, surely reduced the overall time charges for the preparation of the pretrial memorandum of law.

28. The fact that VisuaLex chose the Epstein Becker firm to handle this case is also relevant. Epstein Becker is a large national firm best known for its employment and labor law practice. I was at all times mindful that Epstein Becker has a deep bench of labor and employment law expertise, and that I would need to do my best work in order to adequately represent Ms. Kadden against Epstein Becker as opposing counsel. Traycee Klein, VisuaLex's lead counsel, has almost 20 years litigation experience, and Margaret Thering, who worked on the case from the beginning through trial, is a 2008

10

graduate of Columbia Law School who came to Epstein Becker from the Skadden Arps firm.

29. The time charges are summarized as follows, with amounts calculated at the requested hourly rates of $525 (Risk) and $200 (Mermelstein).

| PERIOD/ACTIVITY | HOURS | VALUE AT REQUESTED RATES |
|---|---|---|
| From inception 6/16/2011 through mediation on 10/24/11 | 45.58 (Risk) | $23,929.50 |
| 10/25/11 through 3/21/12 pretrial conference | 60.78 (Risk) | $31,909.50 |
| 3/22/12 through submission of pretrial papers on 6/21/12 | 122.19 (Risk)<br><br>39.50 (Mermelstein) | $64,149.75<br><br>$7,900.00 |
| 6/22/12 through completion of trial on 8/15/12 | 104.12 (Risk)<br><br>5.70 (Mermelstein) | $54,663.00<br><br>$1,140.00 |
| 8/16/12 through 9/24/12 (two post trial submissions) | 37.63 (Risk)<br><br>2.20 (Mermelstein) | $19,755.75<br><br>$440.00 |
| 9/25/12 through 10/4/2012 (submission on damages issues) | 12.10 (Risk)<br><br>4.05 (Mermelstein) | $6,352.50<br><br>$810.00 |
| 10/22/12 through 11/11/12 (fee application) | 18.25 (Risk)<br><br>4.10 (Mermelstein) | $9,581.25<br><br>$820 |
| **TOTALS** | 400.65 (Risk)<br><br>55.55 (Mermelstein) | $210,345.25<br><br>$11,110.00<br><br>**$221,451.25** |

11

**Reasonable Hours**

30. Under the circumstances described above, in which the legal issues required careful review, the case was handled efficiently, VisuaLex expended great resources defending the lawsuit, and the time charges Kadden incurred were so often the direct result of aggressive tactical choices made by VisuaLex, it is difficult for me to agree to any reduction in the billed hours for "billing judgment."[4]  I recognize, however, that most every case could have, in some respect, been handled more efficiently.  I suggest that rather than debate individual time entries, the Court would make an across the board reduction from our time charges. I ask, however, that such reduction be no greater than eight percent (8%) of the time charges.

**The Disbursements**

31.   Kadden seeks recovery for $ 6,123.12 for out of pocket disbursements that were actually incurred.  The principal disbursements are the filing fee, deposition and trial transcript charges, photocopying charges for trial exhibits, process server charges for trial subpoenas and witness fees.  All of these disbursements are actual amounts that were paid out of pocket, and Kadden is responsible for reimbursement of them under the terms of our retainer agreement, regardless of the outcome of the lawsuit. Kadden is not seeking any recovery for anything not paid by counsel out of pocket – there are no charges for fax transmissions, word processing, internal photocopying, telephone charges, or postage. I am also not seeking compensation for any Westlaw charges, though we used Westlaw

---

[4] The Court called this case "a difficult case" in its decision on liability. *See* Decision of September 24, 2012 at 29.

extensively in preparing the pretrial memorandum of law. The disbursements for which Kadden seeks recovery are:

| | |
|---|---|
| SDNY Filing fee  (check #1993) | $350 |
| N.Y. Secretary of State (service of complaint on VisuaLex) (check #1999) | $60.00 |
| Photocopying discovery docs (Lightning Copy) (check # 2102) | $26.13 |
| Transcripts of court conferences of 3/12  and 3/21 (SDNY Reporters) ($26.40 and $173.17)(paid by credit card 4/2012) | 199.57 |
| Transcript of Romano deposition (Reporters Central Ct. Reporting) (check # 2114) | $1028.50 |
| Trial subpoena witness fees to VisuaLex witnesses (Romano, Marshall, records custodian) (3 x $80)(check #'s 2147, 2148, 2149) | $240.00 |
| Trial subpoena witness fee (H. Moran) (check #2150) | $75.00 |
| Undisputed Legal (process server re trial subpoenas) (check #2151) | $180.00 |
| IRIS Data Services (color photocopying and preparation of tabbed trial exhibit binders) (check #2176) | $1753.69 |
| SDNY court reporters  (trial transcript) (check #2165) | $1452.45 |
| Taxi cabs fares re trial week (8/12-8/15/12)(paid by credit card) | $202.16 |
| Evening word processing services (for pretrial and post trial submissions) (L. McKenzie)(check#'s 2143, 2166, 2170) | $350 |
| Messenger Delivery Charges (Avant Business Services) | $173.40 |
| FedEx charges | $32.22 |
| **TOTAL** | **$6123.12** |

13

32. Based on the foregoing, Kadden seeks recovery of fees and costs as follows:

i) $221,451.25 in attorneys fees, reduced by not more than eight percent (8%), ii) $6123.12 in costs, and such other relief as the court deems appropriate.


Dated: New York, New York
       November 12, 2012


                                                          /s/
                                                   Mark D. Risk